David G. BIELBY, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–653.

United States Court of Veterans Appeals.

Argued March 31, 1994.

Decided Dec. 20, 1994.

James G. Zissler, with whom L. Poe Leggette was on the brief, for appellant.

Michele Russell Katina, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and Adrienne Koerber, Deputy Asst. Gen. Counsel, were on the brief, for appellee.

Before KRAMER, MANKIN, and IVERS, Judges.

MANKIN, Judge, filed the opinion of the Court in which IVERS, Judge, joined.

KRAMER, Judge, filed a separate concurring opinion.

MANKIN, Judge:

David G. Bielby (appellant) appeals a March 3, 1992, decision of the Board of Veterans' Appeals (BVA or Board) determining that the appellant had not submitted new and material evidence to reopen a previously and finally disallowed claim. The appellant claims the BVA erred in determining that the newly submitted evidence was not new and material evidence sufficient to reopen his claim. In response, the VA asserts that the evidence submitted by the appellant is cumulative of that already contained in the record, and is not capable of changing the outcome of the case. We hold, however, that the evidence presented by the appellant is both new and material.

The appellant further claims that the Board's procedures in utilizing an independent medical examiner violated his procedural due process rights. In response, the Secretary argues that there was no violation of the appellant's due process rights and that the procedure used was appropriate in all respects. We hold, based on nonconstitutional grounds, that the procedure was questionable and direct the Board to obtain a new opinion from a different independent medical examiner before readjudicating the appellant's claims.

## I. Factual Background

The appellant served on active military duty from June 1956 to May 1958. His service medical records for the period were largely destroyed by the 1973 fire at the personnel records center in St. Louis. A surviving medical record, however, does indicate that the appellant was diagnosed and treated for infectious mononucleosis from April 12, 1957, to June 1, 1957.

In May 1982, the appellant filed a claim for service connection of multiple sclerosis (MS). In order to establish service connection for MS, a claimant must demonstrate that the condition was incurred in or aggravated by active military service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303 (1993). However, this means of demonstrating direct service connection may be supplanted by satisfying the criteria for presumptive service connection. MS will be presumed to have been incurred in service if the claimant manifests the disease to a degree of ten percent or more within seven years from the date of termination of service, notwithstanding that there may be no evidence of the disease during service. 38 U.S.C. §§ 1112, 1113, 1137; 38 C.F.R. § 3.307 (1993), *as amended by* 59 Fed.Reg. 5106, 5107 (1994); 38 C.F.R. § 3.309 (1993), *as amended by* 59 Fed.Reg. 5107 (1994).

In support of his claims for both direct and presumptive service connection, the appellant submitted numerous lay statements, post-service medical records, expert medical opinions, and a medical journal excerpt. Each piece of evidence is addressed separately below.

The file contains numerous lay statements attesting to personal knowledge of characteristic MS symptomatology the appellant exhibited following his separation from service. The statements of these witnesses reflected that they observed that the appellant experienced dizziness, instability, and vision difficulties, including blurred vision, and that he stumbled frequently and tired easily. A former service comrade of the appellant recalled that the appellant had been hospitalized for dizziness and vision difficulties while they were in the service. He also recalled that the appellant experienced difficulty in grasping objects. Another former comrade stated that the appellant had "some vision problems." Finally, the appellant presented a letter, written in 1966 by his former wife, describing psychiatric difficulties he suffered during the presumptive period.

Post-service medical records and expert medical opinions discuss the onset of his MS. In November 1982, Angie Voekel, M.D., and Jack Burks, M.D., diagnosed the appellant as suffering from MS based upon his history. As part of a neurologic consultation performed in January 1982, Dr. Karen Hall noted that the appellant had been diagnosed in 1971 or 1972 with an abrupt decrease in his right-eye vision. Dr. Hall also confirmed a prior diagnosis that the appellant was suffering from a loss or destruction of myelin, known as demyelinating disease. WEBSTER'S MEDICAL DESK DICTIONARY 170 (1986). Myelin is the material which forms the sheath around the core of the nerve fiber. In

March 1983, Dr. Hall determined, after reviewing the appellant's medical records, history, and lay statements, that he definitely had demonstrated symptoms of MS as early as the mid–1950's, when he exhibited difficulties with double vision, tinnitus, weakness, and difficulty with balance.

A statement from Dr. Jack S. Burks addressed whether the appellant's early difficulties with double vision, dizziness, loss of sensation and grip, and fatigue could be correlated with an onset of MS. Dr. Burks stated, "Concerning [the] specific question as to whether these early events were the early manifestations of [m]ultiple sclerosis, I cannot say for certain. However, they are suggestive of early multiple sclerosis symptoms. Statistically, his complaints . . . are among the most common presenting symptoms of multiple sclerosis."

The appellant also submitted an excerpt from a medical journal concluding that infectious mononucleosis could have neurologic ramifications leading to degeneration of the myelin sheath.

However, based upon the Board's finding that the first symptoms of MS, as described by one of the appellant's doctors, did not appear until 1971 or 1972, and that there was no documentation contemporaneous with service or the presumptive period of the appellant's symptoms or concurrent neurologic signs, the Board denied the appellant's claim in December 1986. The Board also found that the appellant's in-service diagnosis of infectious mononucleosis provided a more plausible explanation for the symptoms he showed during service. Finally, it determined that the letter from the appellant's former wife, while discussing psychiatric difficulties, did not mention any pertinent physical symptoms which might yield a conclusion that the appellant had been suffering from MS.

In March 1987, the appellant attempted to reopen his claim for service connection. In support of his claim, the appellant submitted additional medical records from 1977 regarding alleged MS symptoms existing at that time. He also submitted additional documentation from Dr. Voekel, Dr. Hall, Dr. Burks, Dr. John Simon, Jr., and Dr. W.

Herrera supporting a diagnosis that his MS had an onset date in the mid–1950's. Additional lay statements regarding the appellant's alleged MS symptoms prior to the expiration of the presumptive period in 1965 were also submitted.

The file also contains correspondence provided by the appellant, dated in June 1988, from Dr. Donald H. Gilden. Dr. Gilden stated, "[The appellant] not only has multiple sclerosis, but most likely has been suffering from MS since he was 19 years of age. His neurologic symptoms at that time were consistent, if not characteristic of MS, and represented his first exacerbation of MS."

In addition, the appellant offered numerous medical treatises which discuss possible causes of MS, such as a link between mononucleosis and MS or a link between Epstein-Barr virus (EBV) and MS, or a link between the three. As a result of this submission, in July 1989 the VA directed an engagement letter to the Milton S. Hershey Medical Center in Hershey, Pennsylvania, requesting an independent medical opinion [hereinafter opinion] regarding the cause and time of manifestation of the appellant's MS. The independent medical expert (IME), Dr. Richard Tenser, was directed to discuss possible etiological connections for MS and other illnesses, and the relation of the appellant's history of symptoms to MS. The exact text of this engagement letter is not known as a copy has never been placed in the appellant's file. The engagement letter, however, did not include a copy of the appellant's file. Nonetheless, without reviewing any of the medical history contained in the appellant's file, the IME issued an opinion declaring, "I cannot conclude that there is any correlation between the infectious mononucleosis in 1957 and the subsequent development of multiple sclerosis, which first started possibly in the early 1970's."

The Board directed a second engagement letter to the IME on August 21, 1989, explaining that an opinion customarily was not rendered until after the IME had received and reviewed the claimant's file. The appellant's file was enclosed with this second engagement letter, which also requested an

opinion regarding the "probability that the Epstein Barr virus was an etiological factor in the development of the in-service infectious mononucleosis in 1957 and the subsequent development of multiple sclerosis, definitively diagnosed in 1982 with a reported history of symptoms including double vision, tinnitus, vertigo, and weakness in the early 1970's?" The IME responded to the Board's request in a letter dated August 25, 1989, in which he confirmed his prior findings.

The appellant's claim for service connection was denied by a rating decision dated October 1987. On appeal to the Board, the appellant made three arguments. First, he contended that his MS became manifest during service, masquerading as mononucleosis. Second, he asserted that MS became manifest to a degree of ten percent or more during the presumptive period. Finally, he argued that there was a causal relationship between his in-service mononucleosis and his MS. Based upon the evidence of record, the 1986 Board decision, and the expert opinion of the IME, the Board's February 8, 1990, decision again denied service connection for MS. The appellant failed to appeal this decision within the jurisdictional period and it therefore became final. 38 U.S.C. § 7266(a).

In September 1990, the appellant again sought to reopen his claim. To support reopening, the appellant submitted letters from Dr. Gilden and Dr. Ralph J. Warren, as well as a considerable list of medical treatises. Dr. Gilden's letter reiterated his opinion that the appellant's MS had its onset date during service. Dr. Gilden also opined that the appellant's symptoms of dizziness, fatigue, and vision difficulties during service were not due to infectious mononucleosis. Dr. Warren's letter, based in part on the 1966 letter written by the appellant's former wife, opined that the psychiatric difficulties exhibited by the appellant during service and the presumptive period were symptoms of MS. Finally, the list of treatises submitted by the appellant discussed possible causes of MS. The appellant also used the treatises to call into question the veracity of the conclusion reached by the IME, as well as the integrity of the IME procedure and whether the IME was truly independent of the Board. The

Agency of Original Jurisdiction (AOJ) found that most of the evidence submitted by the appellant was new but not material.

The appellant then submitted copies of several treatises discussing the relationship between MS and mononucleosis, MS and neuropsychiatric disorders, and MS and other infectious diseases from the list of treatises previously submitted. An August 1991 rating decision continued to find that new and material evidence had not been submitted. The appellant appealed to the Board, which found in its March 3, 1992, decision that the appellant had submitted neither new nor material evidence. This appeal followed.

## II. Analysis

### A. New and Material Evidence

Under 38 U.S.C. § 7104(b), a final decision by the Board on a given claim "may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." However, 38 U.S.C. § 5108 provides that a previously and finally disallowed claim may be reopened where new and material evidence has been presented. In order to determine if a claimant has presented new and material evidence, the Board must conduct a two-step analysis. *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991).

■ Whether newly submitted evidence is new and material is a question of law which this Court reviews de novo. *Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992). The new and material analysis requires that two findings be made to conclude that the evidence is new and material—the Court must find that the evidence, first, is new, and, second, that it is material. *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). Evidence is new where it is not merely cumulative or repetitious of evidence already of record. *Id.* at 174. If the evidence is not new, there is no need determine whether the evidence is material. *See Manio*, 1 Vet.App. at 145.

■ We find that the evidence presented by the appellant is both new and material. Specifically, we find that the May 1990 letter from Dr. Gilden is new evidence because it makes two main points. First, it reiterates his June 1988 Dr. Gilden's opinion that the

appellant manifested symptoms of MS in service. Second, the letter provides Dr. Gilden's opinion that appellant's symptoms were not the result of infectious mononucleosis as advanced by the Board. To the extent that the letter restates Dr. Gilden's opinion that the symptoms manifested by the appellant in service were those of MS, it is cumulative and repetitive of evidence already of record. However, to the extent that the letter states that the appellant's symptoms were not caused by infectious mononucleosis, it provides evidence conflicting with the theory advanced by the Board. The appellant had not previously submitted a professional opinion contradicting this determination of the Board. Consequently, this evidence is new.

We also find that the August 1990 letter from Dr. Warren is new evidence. Dr. Warren opined that the psychiatric difficulties manifested by the appellant during service and the presumptive period were symptoms of MS. No such medical opinion had previously been of record, and, therefore, we find that this evidence is new evidence.

Finally, the medical treatises submitted by the appellant after the 1986 denial are new evidence. None of the medical treatises submitted by the appellant has previously been a part of the record. Furthermore, they provide a new basis of authority for granting service connection in that the treatises demonstrate several medically accepted causes for MS. In short, the appellant has presented the treatises to illustrate that disorders formerly unacceptable as causes are now accepted as causes for MS. Thus, while the appellant has previously argued that a number of different disorders may have been the cause of his MS, and the treatises address those previous arguments, we find that they are presented for the purpose of demonstrating that the weight of medical authority has changed, and that the Board should change its determination to accord with that authority. Therefore, we hold that the medical treatises are new evidence.

Newly presented evidence must also be material in order to constitute evidence sufficient to reopen a claim. *Colvin*, 1 Vet.App. at 174. New evidence is also material evidence where there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome. *Id.* For the sole purpose of assessing whether there is new and material evidence to reopen a claim, the credibility of that evidence is presumed. *Justus v. Principi,* 3 Vet.App. 510, 512 (1992). Once a determination as to whether the evidence is sufficient to reopen a claim has been made, the weight of the evidence to establish service connection is a question of fact for the Board. *Cox v. Brown,* 5 Vet.App. 95, 98 (1993). Thus, new and material evidence need not establish service connection for the claimed disability, but need only create a reasonable possibility of service connection for the sole purpose of reopening. *Id.*

The appellant has presented three theories to support his assertion that he should be service connected. First, he asserts that MS was manifested in service masquerading as infectious mononucleosis. Second, he contends that MS was manifested during the presumptive period. Finally, the appellant argues that the virus that causes mononucleosis also causes MS.

The May 1990 letter of Dr. Gilden supports the appellant's first contention that MS was manifested during service masquerading as mononucleosis. It provides a medical opinion that contradicts the findings of the Board used to deny service connection for incurrence in service. After the appellant has satisfied the burden of presenting new and material evidence, the letter may then be considered of sufficient weight to the fact finder to place the evidence in relative equipoise on this issue. Where the evidence is in relative equipoise, the benefit of the doubt must favor the appellant. 38 U.S.C. § 1154(b); 38 C.F.R. § 3.102 (1993). Thus, there is a reasonable possibility that the new evidence, when considered with all the evidence, both old and new, would change the outcome on this issue.

The August 1990 letter of Dr. Warren supports the appellant's second assertion that MS was manifested during the presumptive period. Dr. Warren's opinion is based upon the evidence submitted previously by the appellant, principally on the observations

of the appellant's former wife. The appellant's former wife observed in a letter dated March 18, 1966, that the appellant was suffering from several psychiatric difficulties; however, it did not discuss any physical disabilities. In its December 1986 decision, the Board concluded that this letter was not probative of presumptive service connection because it did not suggest any physical manifestations of MS.

The letter of Dr. Warren, although building on the former wife's letter, presents an alternative theory of presumptive service connection. Dr. Warren opined that the appellant's psychiatric problems were symptoms of the onset of MS, a theory that the Board has not considered previously. This evidence suggests that there were symptoms of MS during the presumptive period, and constitutes a medical opinion which, when considered with the other evidence of record, provides a reasonable possibility that the outcome of this issue would be different.

The Secretary seeks to disqualify this evidence based on three arguments. First, the Secretary, citing *Black v. Brown*, 5 Vet.App. 177 (1993), and *Swann v. Brown*, 5 Vet.App. 229 (1993), argues that the evidence should be disqualified because Dr. Warren relied upon evidence which was related to him by the appellant, and because Dr. Warren's psychiatric diagnosis was made more than twenty years after termination of service. The Secretary further implies that the evidence is somehow unreliable because it was based upon evidence which was not contemporaneous with the presumptive period. However, the opinion of Dr. Warren did not rely on evidence solely related by the appellant, or upon evidence which was not recorded contemporaneously with the presumptive period. The record reflects that the observations upon which Dr. Warren relied were those of the appellant's former wife and that those observations were made contemporaneously with the presumptive period.

Furthermore, 38 C.F.R. § 3.307(c) requires that to demonstrate presumptive service connection for MS, there be shown "by acceptable medical or lay evidence characteristic manifestations of the disease to the required degree, followed without unreasonable time lapse by definite diagnosis." The Secretary essentially argues that there was unreasonable time lapse between the observation by the appellant's former wife and the diagnosis. However, MS is a disease with a prolonged course characterized by remissions and relapses over a course of many years. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1496, 443 (27 ed.1988). Because of the difficulty in diagnosing MS, it does not seem that the lapse of time between the appellant's former wife's observations and the diagnosis of Dr. Warren is unreasonable. This, however, is ultimately a question of fact for the Board to address on remand.

Second, the Secretary asserts that the evidence must be disqualified because the AOJ has previously considered observations of the appellant's former wife. The Secretary cites *Elkins v. Brown*, 5 Vet.App. 474 (1993), for the proposition that evidence that has been previously considered and rejected by the AOJ cannot constitute the basis of a new and material medical opinion. While the Secretary is correct in his assertion of the general principle, the principle finds no application in this case. The Board rejected the observations of the appellant's former wife as indicative of the onset of MS during the presumptive period because those observations did not contain any evidence of physical symptoms. The appellant is now asserting a new basis of establishing service connection, i.e., that psychiatric symptoms manifested by the appellant during the presumptive period were symptoms of MS. Neither the Board nor the AOJ has yet to pass on this issue, and the Secretary is directed to do so on remand.

Third, the Secretary, citing *Paller v. Principi*, 3 Vet.App. 535 (1992), contends that Dr. Warren's letter is merely a corroboration of previously considered and rejected evidence and is, therefore, cumulative. However, Dr. Warren's letter provides a new theory under which the appellant may be presumptively service connected. It is not rehashing or providing further support for previously considered and rejected evidence. Thus, this evidence may not be said to be cumulative, and the Secretary will have the opportunity to consider it on remand.

The appellant's second submission of medical treatises supports and expands on his third argument for service connection that the virus that causes mononucleosis also causes MS. The treatises provide support for a medical theory which the Board has rejected as lacking support in the medical community. The appellant has attacked this determination through the presentation of evidence tending to show that his theory of causation is not groundless as the Board has suggested. In fact, the evidence presented by the appellant provides support for the theory that there may be a causal relationship between MS and mononucleosis. Using the evidence in this fashion is thus different from using it for the sole purpose of disputing the Board's finding that the appellant's MS was not causally related to his mononucleosis. Rather, it is used to dispute the validity of the Board's conclusion that medical evidence or research, in general, does not support the appellant's contention that MS may be causally related to mononucleosis. Accordingly, this evidence provides a reasonable possibility that the Board's determination would be different upon remand.

### B. Independent Medical Examination

 The appellant also contends that the Board and VA denied him procedural due process. Specifically, the appellant claims the IME was biased by the VA's engagement letter and rendered a decision without considering the record. It is a fundamental and longstanding principle of judicial restraint, however, that the courts will avoid reaching constitutional grounds where nonconstitutional grounds will obviate the need to do so. *Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2996, 86 L.Ed.2d 664 (1985); *accord Arkansas Louisiana Gas Co. v. Department of Public Utilities,* 304 U.S. 61, 64, 58 S.Ct. 770, 771, 82 L.Ed. 1149 (1938). It is on these nonconstitutional grounds that we will find that the record supports the appellant's contention that the IME was questionable.

In this instance, the VA provided the IME with both a hypothetical question and the appellant's claims file. However, under the circumstances, neither the hypothetical question nor the claims file constituted a proper basis for an expert opinion upon which the BVA could rely. There are few rules governing the procedure of obtaining and utilizing an IME. The regulations state simply:

> When warranted by the medical complexity or controversy involved in a pending claim, an advisory medical opinion may be obtained from one or more medical experts who are not employees of the VA. Opinions shall be obtained from recognized medical schools, universities, clinics or medical institutions with which arrangements for such opinions have been made, and an appropriate official of the institution shall select the individual expert(s) to render an opinion.... Approval [for an IME] shall be granted only upon a determination ... that the issue under consideration poses a medical problem of such obscurity or complexity, or has generated such controversy in the medical community at large, as to justify solicitation of an independent medical opinion. When approval has been granted, the Compensation and Pension Service shall obtain the opinion.

38 C.F.R. § 3.328 (1993).

The VA Adjudication Procedure Manual, Part VI, para. 1.04 (Sept. 21, 1992) [hereinafter M21–1] states:

> An advisory medical opinion may be obtained from medical experts who are not employees of the VA if warranted by the medical complexity or controversy involved in a pending claim. A request for an independent medical opinion in conjunction with a pending claim may be initiated by the regional office, by the claimant, or by his or her representative. This request must be submitted in writing and must set forth in detail the reasons why the opinion is necessary.... If it is determined that an independent medical opinion is warranted, the Compensation and Pension Service will obtain the opinion.

*Id.*

 We recognize that as a general principle the Federal Rules of Evidence do not apply to proceedings before the Regional Office (RO), the Board, or this Court. *See Flynn v. Brown,* 6 Vet.App. 500, 503 (1994) (Rules of hearsay evidence do not apply to proceedings before Board). However, this

Court has relied on the FEDERAL RULES OF EVIDENCE as a source of persuasive authority in establishing rules of procedural fairness to be applied in VA and Board proceedings. *Thurber v. Brown,* 5 Vet.App. 119, 126 (1993) (Fed.R.Evid. used as persuasive authority in establishing procedural rule of fairness regarding notice and opportunity to be heard); *Austin v. Brown,* 6 Vet.App. 547, 551 (1994). Therefore, we will again turn to the FEDERAL RULES OF EVIDENCE as a source of persuasive authority.

The FEDERAL RULES OF EVIDENCE have liberalized the standards by which an expert may testify. FED.R.EVID. 705 and committee notes. Under Rule 705 an "expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or date, unless the court requires otherwise." Nonetheless, Rule 703 requires that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." This Rule permits the expert to base his opinion on, for example, a hypothetical question setting out sufficient facts of the case, or a review of the case file, or upon first hand observation of evidence at the scene or in the courtroom. FED.R.EVID. 703 and Committee Notes.

■ First, it appears from the record that the IME's initial opinion in this case was rendered without benefit of review of the appellant's file. The purpose of utilizing an expert, such as an IME, is to assist the trier of fact in understanding complex evidentiary materials in a claim. 38 C.F.R. § 3.328; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.,* — U.S. —, —, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993) (expert's role is to assist trier of fact understand complex issues in case); *see also* FED.R.EVID. 702. In fact, in other federal courts under FED.R.EVID. 703, an expert's opinion is not competent unless it is based upon facts or data *in the particular case* then under consideration. *Burns v. Secretary of Health and Human Services,* 3 F.3d 415, 417 (Fed. Cir.1993); *Brown v. Parker–Hannifin Corp.,* 919 F.2d 308, 311 (5th Cir.1990); *Calhoun v. Honda Motor Co., Ltd.,* 738 F.2d 126, 131–32

(6th Cir.1984); *Horton v. W.T. Grant Co.,* 537 F.2d 1215, 1218 (4th Cir.1976); *United States v. R.J. Reynolds Tobacco Co.,* 416 F.Supp. 313, 315 (D.N.J.1976); *see also* FED. R.EVID. 703 advisory committee's note. In order for an expert's opinion to be based upon the facts or data of a case, those facts or data must be disclosed to or perceived by the expert *prior* to rendering an opinion, otherwise the opinion is merely conjecture and of no assistance to the trier of fact. *Horton,* 537 F.2d at 1218. Since principles of service connection require a showing that a disability was incurred in or aggravated by military service, 38 C.F.R. § 3.303 (1993), this causal requirement dictates that an IME's failure to, at a minimum, review a claimant's file as to military service and medical conditions while in service, renders any opinion uninformed and valueless on the issue of causation. We hold that the IME's initial opinion in this matter is without evidentiary value as he failed to review the appellant's record, and thus had no basis of fact or data upon which to render an expert opinion as to any etiological relationships involved in this appellant's specific situation.

■ Next, the Board presented the IME with a flawed hypothetical question. *See Embrey v. Bowen,* 849 F.2d 418, 423 (9th Cir.1988) (expert's opinion in Social Security disability case could not be relied upon because hypothetical question posed to expert did not accurately reflect the claimant's disabilities and other limitations). The hypothetical question may not suggest an answer or limit the field of inquiry by the expert. *See id.* Rather, the engagement letter must pose to the IME a hypothetical question which fully and accurately reflects the disability picture, including both objectively demonstrated disabilities and subjectively claimed pain or other disability. *See Gamer v. Secretary of Health and Human Services,* 815 F.2d 1275, 1279–80 (1987) (hypothetical questions posed to expert in Social Security disability case must set out all of claimant's disabilities, including those supported by medical evidence as well as subjective claims of pain). If the engagement letter fails to set forth all of the claimant's impairments, both objective and subjective, or fails to set forth

any other relevant factual detail, such as the time period during which symptomatology manifested itself, the IME cannot render an opinion which is supported by a sufficient prior review of and plausible basis in the record. *See DeLorme v. Sullivan,* 924 F.2d 841 (9th Cir.1991) (substantial evidence supported administrative law judge's opinion based upon opinion of vocational expert which was, in turn, based upon properly developed hypothetical question setting forth all of claimant's disabilities); *see also Janeway v. Secretary of Health and Human Services,* 702 F.Supp. 795, 797 (C.D.Cal.1988) (if hypothetical question posed to expert in Social Security disability case does not set forth all of claimant's impairments, expert's opinion cannot be based upon substantial evidence); *see also Gilbert v. Derwinski,* 1 Vet. App. 49, 52–53 (1990) (Court may overturn Board's findings of fact where they are not supported by a plausible basis in the record).

 In this case, the Board constrained the IME's scope of inquiry, thereby limiting his investigation and tainting the results. The Board's second engagement letter stated that symptomatology characteristic of MS had manifested itself only in the early 1970's, while there was other evidence of record providing an earlier date. The Board directed the IME to address the issue regarding the etiologic relationship of EBV, mononucleosis, and MS only, while a crucial consideration at the time was the appellant's claim for presumptive service connection. The statute, 38 U.S.C. § 7109, and regulation, 38 C.F.R. § 20.901, governing the provision and use of an IME leaves to the discretion of the Board the necessity of obtaining an opinion. Thus, the Board's selection of issues to be addressed by the IME is entirely discretionary but it cannot limit background information so as to prejudice the IME. In this instance, the Board presented the IME with a hypothetical question that incorrectly limited the possible date of onset of the appellant's claimed MS. The Board's limiting of the facts stated to the IME may have prevented him from rendering a fully informed and neutral opinion.

Thus, we conclude that the BVA failed to provide the correct hypothetical situation to be addressed by the IME, and that the IME additionally failed to consider the correct facts as they were known at the time of the adjudication because he did not review the record prior to rendering an opinion. Consequently, the Board will obtain a new opinion from a different IME as part of readjudicating the appellant's reopened claim.

### C. Appellant's Claim of Clear and Unmistakable Error

The record reflects that the appellant submitted a letter dated September 1990 to the VA following the 1990 BVA decision, using the phrase "[O]n the issue of a 'clear and unmistakable error'" and citing 38 C.F.R. § 3.105(a) (1993). He further alleged that the BVA applied the wrong law to his claim, and in support thereof, he cited a series of regulations, alleging that "all require acceptance of and consideration of lay evidence." Those regulations are 38 C.F.R. § 3.303(a) (principles related to service connection); 38 C.F.R. § 3.103(a) (duty to assist a claimant); 38 C.F.R. § 3.103(b) (right to notice affecting the payments of benefits or granting of relief); 38 C.F.R. § 3.307(b) (evidentiary basis may be established by medical evidence, competent lay evidence or both); and 38 C.F.R. § 3.303(b) (with chronic diseases shown in service or within the presumptive period to permit a finding of service connection, subsequent manifestations of the same disease are service connected unless attributed to other causes).

The appellant's substantive appeal (Form 1–9), received on March 27, 1991, made the same allegations using somewhat different terms and using some different citations to the regulations. The appellant alleged in a paragraph entitled "ERRORS THE VA MADE IN APPLYING THE LAW" that "No effort has ever been made to adhere [to] Title 38 [C.F.R. §§ ] 3.307[ ](b), 3.309, 3–303 [sic], 3.102, 3.103(b), or 3.326." These are in effect, the same allegations made in the 1990 letter to the RO.

 A claim of CUE must be specific and not a mere broad allegation of a failure to follow the regulations, or the failure to give due process, or any other general, nonspecific claim of CUE. *Fugo v. Brown,* 6

Vet.App. 40, 44 (1993); *Russell v. Principi*, 3 Vet.App. 310 (1992) (an appellant must assert "more than a disagreement as to how the facts were weighed or evaluated). The appellant may not simply allege CUE on the basis that prior adjudications had improperly weighed and evaluated the evidence. *Fugo*, 6 Vet.App. at 43–44. Neither the appellant's September 1990 letter nor his Form 1–9 makes any assertions that compliance with the cited regulations would have manifestly changed the outcome of his case. Thus, as to the 1990 BVA decision, CUE was not pled in accordance with the Court's standard in *Fugo*. However, since the United States Court of Appeals for the Federal Circuit recently held that this Court's authority to review CUE under 38 C.F.R. § 3.105(a) (1993) "relat[es] only to review of AOJ adjudicatory decisions and not to those of the Board," *Smith v. Brown*, 35 F.3d 1516, 1527 (Fed.Cir.1994), this Court lacks jurisdiction to review the appellant's allegations of CUE. *Id.*

### III. Conclusion

Having considered the appellant's brief and reply brief, the Secretary's brief, and the record, the Court denies the Secretary's motion to strike as moot, and VACATES and REMANDS the matter. We hold that the evidence presented by the appellant is new and material evidence. The Board shall consider the sufficiency of this evidence in conjunction with the old evidence to support the appellant's claim for both presumptive and direct service connection on remand. The Board shall obtain a new independent medical opinion in a manner consistent with this opinion prior to readjudicating the appellant's claim.

KRAMER, *Judge*, concurring:

I concur to the extent indicated.

As to Part II(A), the letters written by Dr. Gilden and Dr. Warren constitute new and material evidence. Pursuant to 38 U.S.C. § 5108, the Secretary must reopen a previously and finally disallowed claim when "new and material" evidence is presented or secured with respect to that claim. *See* 38 U.S.C. § 7104(b). "New" evidence is that

which is not merely cumulative of other evidence of record. *Cox v. Brown*, 5 Vet.App. 95, 98 (1993). "Material" evidence is that which is relevant to and probative of the issue at hand, and which provides a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome of the case. *Id.* Both Dr. Gilden's and Dr. Warren's letters: (1) provide information which is not cumulative of other evidence of record, (2) are relevant to and probative of the issue of whether the appellant's multiple sclerosis (MS) became manifest during the presumptive period, and (3) provide a reasonable possibility, when viewed in context of all the evidence of record, that the appellant could be entitled to presumptive service connection for MS. Both letters are therefore new and material.

As to Parts II(B), (C), on the specific facts of this case, whether the two independent medical opinions violated the fair process requirements of *Thurber v. Brown*, 5 Vet. App. 119, 120–21 (1993), and *Austin v. Brown*, 6 Vet.App. 547, 551–52 (1994), is not a proper subject for review by this Court. While the use of these two medical opinions may have created error in the February 1990 Board of Veterans' Appeal decision, the Court has no jurisdiction over this decision because: (1) the Notice of Disagreement which led to that decision was filed prior to November 18, 1988 (Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note)); (2) no timely Notice of Appeal was filed as to that decision (38 U.S.C. § 7266); and (3) it cannot be the subject of review for clear and unmistakable error (CUE) (*Smith (William A.) v. Brown*, 35 F.3d 1516 (Fed.Cir.1994)). Thus, error in the February 1990 decision cannot be a predicate either for ordering a new medical opinion or for CUE.

Nevertheless, because new and material evidence has been submitted, the appellant's claim is of necessity well grounded, thus triggering the duty to assist. *See Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992); 38

U.S.C. § 5107. On that basis, a new medical examination/opinion should be ordered.