This version includes the errata issued on 27Jul04 - e

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 02-2259

BARNEY O. PADGETT, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 29, 2004                                    Decided   July 9, 2004  )

*James W. Stewart* (non-attorney practitioner), with whom *Barton F. Stichman* was on the brief, both of Washington, D.C., for the appellant.

*Edward V. Cassidy*, *Jr.*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Cristine D. Senseman*, were on the brief, all of Washington, D.C., for the appellee.

Before FARLEY, IVERS, and KASOLD, *Judges*.

FARLEY, *Judge*, filed the opinion of the Court. KASOLD, *Judge*, filed a dissenting opinion.

FARLEY, *Judge*: On December 6, 2002, the veteran filed a Notice of Appeal (NOA) as to an August 8, 2002, Board of Veterans' Appeals (Board or BVA) decision that had denied his claim for service connection for osteoarthritis of the right hip on a direct, presumptive, and secondary basis. Record (R.) at 1-20. The veteran seeks a reversal of the Board decision and the Secretary argues that the Board decision should be affirmed. The Court will vacate the Board's decision and remand the matter for readjudication consistent with this opinion.

**I. FACTS**

The veteran served on active duty in the U.S. Army during World War II from January 1943 to July 1945. R. at 22-23. He is a combat veteran who served in Europe, Africa, and the Middle East. *Id.* In March 1943, he injured his left knee as a result of slipping on ice in Plattsburgh, New York. R. at 43. In July 1944, he re-injured his left knee when he jumped into a ditch to avoid shell fire. R. at 54, 71. The veteran's service medical records indicate that he was diagnosed with a sprained left knee, chronic, severe, and synovitis of the left knee, chronic, severe, secondary to the left-knee sprain. *Id.* In August 1945, a VA regional office (RO) granted the veteran service connection for residuals of a left-knee injury, rated at 30% disabling. R. at 92. At some time thereafter, the rating was reduced to 10%. R. at 149.

In September 1975, the veteran filed claims seeking service connection for arthritis-related pain in his left leg, left hip, and the left side of his back. R. at 149. In a June 1976 rating decision, the RO awarded a 30% rating for traumatic arthritis of the left knee, residual sprain of the left knee with favorable ankylosis. R. at 185. The RO denied service connection for a lumbar-spine disorder and determined that the evidence did not indicate the existence of a current left-hip disorder. R. at 185-87. The veteran appealed to the Board, claiming that all his arthritis had been caused by his service-connected left-knee injury. R. at 189-92, 201. In an April 1977 decision, the Board denied the veteran's claim, finding that the veteran's arthritis of multiple joints other than his left knee was not incurred while in service, aggravated by service, or caused by an in-service disease or injury. R. at 211-15.

In March 1993, the veteran sought to reopen his claim for service connection for a *right* hip disorder. R. at 218. The RO obtained treatment records from the veteran's orthopedic surgeon, Dr. Charles H. Shaw. In 1982, Dr. Shaw noted that the veteran was "morbidly obese" and was suffering from degenerative arthritis of the neck, spine, and knees. R. at 226. In November 1988, Dr. Shaw wrote that x-rays taken after an October 1988 automobile accident showed, inter alia, severe degenerative arthritis of the left knee with lesser changes in the right knee, and severe degenerative arthritis of the right hip with lesser changes in the left hip. R. at 230. The veteran underwent a right-total-hip arthroplasty in August 1989. R. at 233-37. In January 1991, Dr. Shaw also recommended a left-total-knee arthroplasty. R. at 237.

In May 1993, the RO denied the veteran's claim for service connection for a right-hip disability secondary to his service-connected knee injury, stating that there was no evidence that his hip condition had been caused by his knee disability. R. at 240, 242. The veteran appealed to the Board. R. at 246, 260. With his appeal, the veteran submitted additional medical statements from his private physicians. In a letter dated December 13, 1993, Dr. Shaw stated:

> Mr. Padgett historically sustained an injury to his left knee while in the [s]ervice. This injury has resulted in severe endstage traumatic osteoarthritis of his knee. He also states that he thinks he sustained an injury to his hip as a result of that same incident. Over the years he has developed progressively increasing degenerative disease of both his left knee and right hip.
>
> It is my feeling that the gait abnormalities associated with the severity of the disease involving his left knee ha[ve] adversely impacted the progression of the degenerative disease of his right hip and have in fact aggravated his symptoms with it. It is my feeling that the degenerative disease that he has experienced in his right hip is related to his original injury.

R. at 262. In a letter dated January 11, 1994, Dr. Robert Thoburn, a specialist in internal medicine and rheumatology, stated:

> The patient had an injury to the left knee while in the service. This has progressed to severe osteoarthritis of the left knee secondary to trauma. He thinks he sustained an injury to the right hip and has progressive pain and stiffness of the right hip.
>
> He has an endstage left knee that has resulted in weight shifting to the right side. It is likely that this has resulted in progression of osteoarthritis of the right hip. It is consistent that the osteoarthritis of the right hip and left knee are related to the original injury.

R. at 261. The veteran also submitted an October 1993 letter from Dr. James A. Rawls, in which Dr. Rawls stated that he had treated the veteran for almost 30 years and noted that "a major problem most of this time has been osteoarthritis involving the weight-bearing joints, knees, hips, and low back." R. at 263. In March 1994, after reviewing the new evidence submitted by the veteran, the RO continued the denial of the veteran's claim. R. at 272-74.

3

In May 1994, the veteran filed a Notice of Disagreement (NOD) with respect to the March 1994 RO decision and on December 2, 1994, he was afforded a hearing before an RO hearing officer. At the hearing the veteran testified that he had injured his hip while in service at the same time he had re-injured his left knee in 1944. R. at 296-97. In a January 1995 decision, the hearing officer denied the veteran's claim, stating that the evidence did not provide a sufficient basis for service connection on either a direct or secondary basis. R. at 303-04.

The veteran filed an appeal with the Board (R. at 319) and submitted additional statements from Dr. Thoburn and Dr. Shaw (R. at 325, 340). In a letter dated November 3, 1995, Dr. Thoburn stated "[i]t is my feeling that a shift in weight [because of his altered gait] plus his size and obesity contributed to accelerated osteoarthritis of his right hip," thereby leading to a total right-hip replacement. R. at 325. In an October 1996 statement, Dr. Shaw opined that the veteran's irregular gait pattern resulting from his left-knee injury increased symptoms in the veteran's right hip, which ultimately required right-hip replacement. R. at 340. Dr. Shaw concluded that "[the veteran's] war-related injury directly aggravated his symptoms with respect to his hip." *Id.*

In April 1997, the Board remanded the case to the RO to adjudicate the veteran's claim on a direct basis, reconsider his claim on a secondary basis as a result of the Court's decision in *Allen v. Brown*, 7 Vet.App. 439 (1995) (en banc) (holding that a veteran may be awarded compensation for the aggravation of a non-service-connected condition by a service-connected disability), and afford him a hearing before a traveling section of the Board. R. at 354-57.

On June 27, 1997, the veteran underwent a VA examination by Dr. F. Henderson. R. at 360-63. Dr. Henderson concluded that the veteran suffered from multijoint "degenerative joint disease" that was "a consequence of the aging process" rather than any one specific injury. *Id.* at 363. However, he also stated that the veteran's left-knee injury may have "played a part in the damage that later required a left-knee replacement, but not necessarily a hip replacement." *Id*. In addition, Dr. Henderson noted that he had not reviewed the claims file and that a certified orthopedist should review the case for a more definitive opinion. R. at 361, 363.

During a February 1999 Board hearing, the veteran again testified that he had injured his right hip at the same time he had re-injured his knee in 1944. R. at 393-410. In July 1999, the Board requested an expert medical opinion from the chief of staff of the Columbia, South Carolina, VA

4

medical center (VAMC). R. at 413-15. The Board stated that the opinion was requested pursuant to Veterans Health Administration Directive 10-95-040 (April 17, 1995), 38 C.F.R. § 20.901 (1996), and 38 U.S.C. § 7109. R. at 413. The doctor who examined the veteran, Dr. John K. Blincow, concluded that (1) the veteran's right-hip disorder was caused by age-related degenerative arthritis and was not related to his in-service left-knee injury or a gait abnormality and (2) the veteran's left-knee disability did not aggravate or cause an increase in severity of his right-hip arthritis. R. at 418-20.

On August 8, 2002, the Board issued the decision on appeal. R. at 1-19. In its decision, the Board accorded the VA medical opinions more weight than the opinions of the veteran's private physicians. R. at 14-18. In doing so, the Board noted the "equivocal and apparently unsubstantiated nature" of the opinions of the private physicians. R. at 16. The Board also stated that "both of [the VA opinions] have tremendous probative value as both were based on a thorough review of the claims file, which is essential [to] formulating a sound opinion." *Id.* The Board found that the medical evidence did not indicate a nexus between an in-service injury to the veteran's hip and his current hip disability or that his hip disability manifested within one year of his discharge and denied service connection on direct and presumptive bases. R. at 14-17. The Board also denied the veteran's claim on a secondary basis, concluding that the veteran's hip injury was not related to his service-connected left-knee disability. R. at 17-18.

In his brief, the appellant argues, inter alia, that (1) the Board erred in relying on the June 1997 VA medical opinion because the examiner did not review the veteran's claims file, did not discuss the positive medical evidence in the claims file, and did not take as a given that the veteran injured his right hip in combat (Appellant's Brief (Br.) at 17-18); (2) under the law as it existed in 1999, the Board lacked the legal authority to secure the 1999 VA medical opinion of Dr. Blincow, and even if the Board had the authority to obtain such an opinion, under 38 U.S.C. § 7104(a) and the United States Court of Appeals for the Federal Circuit's (Federal Circuit) opinion in *Disabled American Veterans v. Secretary of Veterans Affairs* (*DAV v. Sec'y*), 327 F.3d 1339 (Fed. Cir. 2003), the Board could not consider the opinion without first remanding the matter to the agency of original jurisdiction (AOJ) or obtaining the appellant's waiver (Appellant's Br. at 20-24); and (3) the Board's finding that the veteran's right-hip condition is not related to an in-service injury or his service-

connected left-knee disability is clearly erroneous because private medical opinions of record provide the required etiological relation for service connection (*Id*. at 15-16). The appellant argues further that because the Board could not properly rely on either VA opinion, the only medical opinions properly before the Board or the Court support the appellant's claim and the Court should reverse the Board decision. *Id.* at 25. In the alternative, the appellant argued that the Court should remand the case for the Board to correct the errors identified by the appellant in his brief and for compliance with the duties to notify and assist under the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat 2096. Appellant's Br. at 26 n.2.

The Secretary initially filed a brief in which he argued mainly for a remand based on VA's failure to comply with the duty to notify under the VCAA. Secretary's Br. at 7-13. However, the appellant filed a reply brief in which he "waive[d] this Court's consideration on the errors relating to the VCAA duty to notify discussed in . . . the Secretary's brief." Appellant's Reply Br. at 1-2. The Secretary, with leave of the Court, then filed a sur-reply brief in order to address the appellant's non-VCAA related arguments. While the Secretary concedes that the Board erred in relying on the 1997 VA opinion (Secretary's Br. at 10), he argues that the Board had the authority to obtain the 1999 VA medical opinion of Dr. Blincow pursuant to 38 U.S.C. § 7109 and 38 C.F.R. § 20.901 (2002), and that opinions obtained pursuant to section 7109 or section 20.901 do not require remand to the AOJ for initial consideration (Secretary's Sur-Reply Br. at 3-7).

The appellant filed a response to the Secretary's sur-reply brief in which he argued, inter alia, that Dr. Blincow's medical opinion did not fit under any exception to 38 U.S.C. § 7104(a) that would allow the Board to initially consider additional evidence. Appellant's Response to Secretary's Sur-Reply Br. at 2-6. Oral argument was heard on April 29, 2004. During oral argument, the appellant's representative stated that the appellant's waiver of the Court's consideration of his rights under the VCAA was intended to extend to 38 C.F.R. § 3.159(b)(1) (2003), under which, inter alia, the Secretary has obligated himself to "request that the claimant provide any evidence in the claimant's possession that pertains to the claim."

## II. ANALYSIS

### A. The Board's Consideration of the 1999 VA Opinion

This case is controlled by the Federal Circuit's decision in *DAV v. Sec'y, supra*. In that decision, the Federal Circuit invalidated 38 C.F.R. § 19.9(a)(2) (2002) because it allowed the Board to consider additional evidence developed by the Board without having to remand the case to the AOJ and without requiring a waiver from the appellant. *See DAV v. Sec'y*, 327 F.3d at 1347. As the Federal Circuit stated:

> Section 19.9(a)(2), in conjunction with . . . 38 C.F.R. § 20.1304, is inconsistent with 38 U.S.C. § 7104(a), because § 19.9(a)(2) denies appellants "one review on appeal to the Secretary" when the Board considers additional evidence without having to remand the case to the AOJ for initial consideration and without having to obtain the appellant's waiver. Indeed, Congress unambiguously addressed this issue in 38 U.S.C. § 7104(a) by decreeing that "all questions in a matter which . . . is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary." The VA therefore has no choice but to give effect to Congress's clear intent. *See Chevron* [*U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984)]. In compliance with that command, the VA has—until now—generally required the Board, when considering additional evidence, to remand the case to the AOJ or obtain the appellant's waiver. *See* 38 C.F.R. §§ 19.9, 20.1304 (2001); *cf. INS v. Ventura*, 154 L. Ed. 2d 272, 537 U.S. 12, 123 S. Ct. 353, 355 (2002) (per curiam) (noting that the lower-level decisionmaker can "bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a [higher] court later determine whether its decision" is appropriate). When the Board obtains evidence that was not considered by the AOJ and does not obtain the appellant's waiver, however, an appellant has no means to obtain "one review on appeal to the Secretary," because the Board is the only appellate tribunal under the Secretary.
>
> Moreover, the veteran is not effectively able to object to any of the additional evidence obtained by the Board until after the Board weighs the evidence and decides the appeal. Although 38 C.F.R. § 20.903 . . . requires the Board to notify the appellant of evidence it has obtained, this notice does not include a statement of the weight the Board intends to assign to new evidence, an assessment of whether the evidence is determinative, significant, or of minimal impact, or a statement whether the new evidence will likely result in the denial of the appeal, and a list of the claimant's options.

> Accordingly, a mere statement of additional evidence, without more, does not provide for the veteran to explore effectively a basis for "one
>
> review on appeal to the Secretary" with respect to the additional evidence as required by 38 U.S.C. § 7104(a).

*DAV v. Sec'y*, 327 F.3d at 1347.

In the instant case, it is not disputed that the Board obtained and considered the 1999 medical opinion of Dr. Blincow without remanding the appellant's claim to the RO and without obtaining the appellant's waiver. However, the Secretary, relying on dicta in *DAV v. Sec'y*, asserts that 38 U.S.C. § 7109 and 38 C.F.R. § 20.901 (2002) provide exceptions to section 7104(a) that allow the Board to consider additional medical opinions without remanding to the AOJ. In *DAV v. Sec'y*, the Federal Circuit indeed recognized that Congress could create exceptions to section 7104(a). In that respect the Federal Circuit remarked:

> [W]hen *Congress* intended to authorize the Board to obtain additional evidence without "one review on appeal to the Secretary," it knew how to do so. Congress has provided *express statutory authority* to permit the Board to obtain additional evidence, such as expert medical opinions in specific cases. *See, e.g.*, . . . 38 U.S.C. § 7109 (2000) (authorizing Board to obtain independent medical opinions from outside the VA); 38 C.F.R. § 20.901(a) (2002) (authorizing Board to obtain opinions from the Veterans Health Administration); 38 C.F.R. § 20.901(b) (authorizing Board to obtain medical opinions from the Armed Forces Institute of Pathology).

*DAV v. Sec'y*, 327 F.3d at 1347-48 (emphasis added). While it is clear that Congress may provide exceptions to section 7104(a) through express statutory authority, a close look at section 38 C.F.R. § 20.901 (2002) and 38 U.S.C. § 7109 reveals that they do not contain any such exception. Section 20.901 is, obviously, a regulation promulgated by the Secretary, not a statute enacted by Congress. Moreover, nothing in section 20.901 provides an express exception to section 7104(a). Although, as the Secretary points out, 38 C.F.R. § 19.9(c)(1) (2002) does purport to exempt medical opinions obtained pursuant to section 20.901 from initial consideration by the AOJ, section 19.9(c)(1) is also a regulation, not a statute.

Section 7109 provides:

(a) When, in the judgment of the Board, expert medical opinion, in addition to that available within the Department, is warranted by the medical complexity or controversy involved in an appeal case, the Board may secure an advisory medical opinion from one or more independent medical experts who are not employees of the Department.

(b) The Secretary shall make necessary arrangements with recognized medical schools, universities, or clinics to furnish such advisory medical opinions at the request of the Chairman of the Board. Any such arrangement shall provide that the actual selection of the expert or experts to give the advisory opinion in an individual case shall be made by an appropriate official of such institution.

(c) The Board shall furnish a claimant with notice that an advisory medical opinion has been requested under this section with respect to the claimant's case and shall furnish the claimant with a copy of such opinion when it is received by the Board.

38 U.S.C. § 7109. While section 7109 allows the Board to obtain independent medical opinions, nowhere does it state that the Board may consider those opinions without remanding to the AOJ or obtaining a waiver from the claimant. *See id.*

At oral argument the Secretary argued that despite the lack of any language in section 7109 suggesting so, the legislative intent behind section 7109 was to allow the Board to obtain and consider medical opinions without remand. However, the first question in statutory interpretation is always "whether Congress has directly spoken to the precise question at issue." *Chevron,* 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43. As the Federal Circuit noted in *DAV v. Sec'y*, "Congress unambiguously addressed this issue [of whether the Board can consider additional evidence] in 38 U.S.C. § 7104(a) by decreeing that 'all questions in a matter which . . . is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary.' The VA therefore has no choice but to give effect to Congress's clear intent." *DAV v. Sec'y*, 327 F.3d at 1347; *see also* VA Gen. Coun. Prec. 1-2003 at 3 (May 21, 2003) (stating that section 7104(a) "prohibits the Board from considering additional evidence without remanding or obtaining a waiver" (underlining in original)). The plain language of section 7109 is barren of any

intent to provide an exception to section 7104(a). *See Gardner v. Derwinski,* 1 Vet.App. 584, 587-88 (1991) ("Where a statute's language is plain, and its meaning clear, no room exists for construction."). Section 7109 simply states that the Board may obtain independent medical opinions. Sections 7104(a) and 7109 may both be given their plain meaning by requiring that the Board remand claims to the AOJ for consideration of additional evidence. *See Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992) ("'[E]ach part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole.'" (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (4th ed. 1984))).

Accordingly, we hold that Congress has provided no exception to section 7104(a) that would allow the Board to consider the additional evidence provided by Dr. Blincow's opinion without remanding the appellant's claim to the RO for initial consideration or obtaining a waiver from the appellant. Because the Board's decision was based in part on Dr. Blincow's opinion, that decision must be vacated. *See* 38 U.S.C. § 7104(a); *DAV v. Sec'y*, *supra*.

## B. Remedy

In this matter, the evidence in its entirety was not considered by the proper forum. Therefore, the appropriate remedy is to remand the claim to the Board to proceed in compliance with the Federal Circuit's holding in *DAV v. Sec'y, supra*, and this opinion. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("[W]here the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy. . . . [T]his will permit the Board to make the appropriate required determinations[] under the correct legal standards . . . ." (citation omitted)); *see also INS v. Ventura*, 537 U.S. at 16 ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands. . . . The agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides."); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged action on the basis of the record before it, the proper course, except in rare circumstances,

is to remand to the agency for additional investigation or explanation."); *Ford Motor Co. v. NLRB*, 305 U.S. 364, 375 (1939) ("There is nothing in the . . . principles governing judicial review of administrative action, which precludes the court from giving an administrative body an opportunity to meet objections to its order by correcting irregularities in procedure, or supplying deficiencies in its record, or making additional findings where these are necessary, or supplying findings validly made in the place of those attacked as invalid."); *Wagner v. Principi*, No. 02-7347, 2004 U.S. App. LEXIS 10615 (Fed. Cir. June 1, 2004) (where BVA and this Court had applied the incorrect legal standard, Federal Circuit determined the correct legal standard and remanded the claim for "further consideration"). Unless the Board awards the appellant the full benefits sought by the appellant on appeal to the Board, or obtains a waiver from the appellant, the Board must remand the appellant's claim to the AOJ for an initial decision based on the additional evidence not yet considered by the AOJ.

Although the appellant asks the Court to reverse the Board decision, reversal is the appropriate remedy only when "[t]here is absolutely no plausible basis" for the BVA's decision. *Hersey v. Derwinski*, 2 Vet.App. 91, 95 (1992).

> If the [factfinder]'s account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Gilbert v. Derwinski,* 1 Vet.App. 49, 52 (1990) (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573-74 (1985)). For the Court to consider reversal based upon its view of the facts at this point would be tantamount to de novo factfinding, which this Court is prohibited from doing by statute. *See* 38 U.S.C. § 7261(c) ("In no event shall findings of fact made by the Secretary or the Board of Veterans' Appeals be subject to trial de novo by the Court.").

The Court will not address the other arguments and issues raised by the appellant. A narrow decision preserves for the appellant the opportunity to argue any claimed errors upon remand. *Best v. Principi*, 15 Vet.App. 18, 20 (2001). Because the appellant's claim must be considered anew upon remand, the appellant will have the opportunity to present any additional evidence and argument in

11

support of his claim, including his arguments concerning the quality of the medical opinions provided by his private physicians and VA. *See Kay v. Principi*, 16 Vet.App. 529, 533 (2002); *Best*, 15 Vet.App. at 20; *Kutscherousky v. West*, 12 Vet.App. 369, 372 (1999) (per curiam order). Although our dissenting colleague expresses concern regarding an alleged error in the weight afforded Dr. Blincow's opinion, because that issue was never raised to or considered by the Board or VA the Court has no basis upon which to conclude that such an error would be repeated upon remand. Moreover, it is not for the Court to determine, in the first instance, the probative value to be afforded any particular piece of evidence. *See* 38 U.S.C. § 7261(c). As noted above, pursuant to *DAV v. Sec'y, supra*, any new evidence submitted by the appellant on remand must be initially considered by the AOJ. In addition, the Court notes that the VCAA and its implementing regulations will apply on remand. *See Fortuck v. Principi*, 17 Vet.App. 173, 181 (2003).

The Court trusts that, given the appellant's advanced age and the fact that it has now been more than 11 years since he reopened his claim, the Board will provide for expeditious treatment of the veteran's claim upon remand. *See* 38 U.S.C. § 7112.

### III. CONCLUSION

On consideration of the foregoing, the August 8, 2002, decision of the Board is VACATED and the matter is REMANDED.

KASOLD, *Judge*, dissenting: I respectfully do not agree with the majority's analysis and conclusion that "Congress has provided no exception to section 7104(a) that would allow the Board to consider the additional evidence provided by Dr. Blincow's opinion without remanding the appellant's claim to the RO for initial consideration or obtaining a waiver from the appellant" (*ante* at 10), even were the Board to "award the appellant the full benefits sought" *(ante* at 12). Given that decision, however, I also respectfully do not agree with the majority's view that a violation of this requirement means the "decision ***must*** be vacated," *ante* at 10 (emphasis added). Accordingly, I would review the Board's findings and its ultimate decision.

### I. BOARD CONSIDERATION OF MEDICAL OPINIONS OBTAINED UNDER 7109

The majority correctly notes that *Disabled American Veterans v. Secretary of Veterans Affairs,* 327 F.3d 1339, 1347 (Fed. Cir. 2003) (*DAV v. Sec'y*) stands for the general proposition that, absent waiver, an award of benefits, or specific statutory authorization, the Board may not consider evidence in the first instance because such action would deny appellants the section-7104(a) right to one appeal of a decision of the Secretary. However, the majority's rejection of the Federal Circuit's guidance that section 7109 is an "express statutory authori[zation]" for the Board to do so is erroneous and is, in my opinion, based on a faulty and underdeveloped analysis of the statutory scheme. *See DAV v. Sec'y*, 327 F.3d at 1347.

The majority focuses its analysis exclusively on the fact that the "plain language" of section 7109 explicitly authorizes the Board to secure a medical advisory opinion, but it does not explicitly authorize the Board to **consider** that opinion.[1] *Ante* at 10. The majority then concludes that section 7109 is "barren of any intent to provide an exception to 7104(a)" (*ante* at 10), and that in order to comply with section 7104(a), the Board, therefore, must remand a section-7109 medical opinion to the RO for consideration in the first instance. In short, the Board can obtain the evidence but it cannot use it.

The majority opinion suffers from four crucial weaknesses: (1) It is contrary to well-established canons of statutory interpretation; (2) it contradicts, rather than supports, both the statutory language of section 7104(a) and the Federal Circuit's opinion in *DAV v. Sec'y*; (3) it is contrary to the legislative history of section 7109; and (4) it leads to absurd results.

### A. Canons of Statutory Interpretation

The majority states that the "plain language" of section 7109 necessitates its conclusion that the Board can obtain medical opinions under section 7109 but cannot use them. This result, however, is only "necessary" because the majority's analysis is based on too narrow a focus on one word – "secure" – and the fact that section 7109 does not include explicit authorization to review the evidence secured. Although the majority correctly cites *Gardner v. Derwinski*, 1 Vet.App. 584, 587-

---

[1] Even though section 7109 expressly authorizes the Board to secure an expert medical opinion only from an independent medical expert who is not a VA employee, the majority simply assumes this section is applicable to and an authorization of the use of VA doctors. *Ante* at 10 (broadly stating "section 7109 allows the Board to obtain independent medical opinions " without differentiating between VA and non-VA employees). Although I concur in that result of that assumption, I note that it is premised on the explicit recognition in section 7109(a) that the authorization to use non-VA doctors is "in addition to that available within the Department . . . ."

88 (1991), for the proposition that statutory interpretation starts with the plain language of the statute, that proposition is a starting point and is not the totality of analysis. The majority opinion fails to consider and apply one of the overriding canons of statutory construction, that when interpreting a statute "it is not proper to confine interpretation to the one section to be construed." 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46:05 (6th ed. 2000) [hereinafter SUTHERLAND]. Rather, "the court will not only consider the particular statute in question, but also the *entire legislative scheme of which it is a part*." SUTHERLAND, § 46:05 (emphasis added); *see also King v. St. Vincent's Hosp.*, 502 U.S. 215 (1991) (when interpreting statutes, a court is required to look at the context and provisions of the law as a whole); *Imazio Nursery, Inc. v. Dania Greenhouses*, 69 F.3d 1560 (Fed. Cir. 1995) (when interpreting a statute, all parts must be construed together without according undue importance to a single or isolated portion). Moreover, a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." SUTHERLAND, § 46:06.

The statutory scheme of review in this case separately gives the Secretary the authority to obtain medical opinions at the RO level.[2] *See* 38 U.S.C. § 5103A(d). Those medical opinions are first considered by the RO, whose decision can be appealed to the Board. *See* 38 U.S.C. § 7104(a). Section 7109 gives the Board separate and independent authority to secure advisory medical opinions when, "in the judgment of the ***Board***, expert medical opinion . . . is warranted by the medical complexity or controversy involved in an appeal case." 38 U.S.C. § 7109(a) (emphasis added). When considering these two provisions in concert, it is incongruous that Congress would give discretionary authority to the Board to obtain a medical opinion but tie its hands in terms of review in favor of a review by the RO, which already had an opportunity to seek and review medical opinions. This is not a case of regulatory authorization for the Board to consider evidence that conflicts with a statutory right to one review, as considered in *DAV v. Sec'y*. This case involves the statutory scheme itself. Requiring the Board to send information it is statutorily permitted to secure

_____

[2] I note that this statute authorizes the RO to obtain the medical opinion, but it does not explicitly authorize the RO to consider it, similar to section 7109's authorization for the Board to secure medical opinions. It would be absurd to conclude the RO could not consider the medical opinion it obtained.

14

back to the RO for initial consideration is inconsistent with the overall statutory scheme and intent of Congress that the Board resolve conflicts in evidence. *See* part I.C., below (quoting S. REP. NO. 1844 (1962), *reprinted in* 1962 U.S.C.C.A.N. 2585, 2585-86).

B. *Section 7104(a) and Board Review of Section-7109 Medical Opinions are in Harmony*

The majority's analysis purports to hew to the mandates of section 7104(a) and the Federal Circuit's opinion in *DAV v. Sec'y*, and to harmonize a perceived conflict between section 7104(a) and section 7109. *Ante* at 10-11. In reality, however, there is no conflict between the two sections and the Board's review of evidence obtained under section 7109. Section 7104(a) states that: "All questions *in a matter which under section 511(a) of this title is subject to decision by the Secretary* shall be subject to one review on appeal to the Secretary." 38 U.S.C. § 7104(a) (emphasis added). The majority focuses on the "one review on appeal" language without proper consideration of the rest of this provision, i.e., without considering whether a section-7109 medical opinion is a "question . . . subject to decision by the Secretary" under section 511(a). Unlike the concern about regulatory authorization for the Board to take additional evidence in *DAV v. Sec'y*, obtaining a medical opinion under section 7109 is an action that statutorily *cannot* be undertaken by the Secretary. It can *only* be undertaken by the Board. There is therefore no indication as to how such an action could ever be subject to a decision under section 511(a). This is buttressed by examining section 7109 itself. Paragraphs (a) and (c) of section 7109 commit authority to the Board to, respectively, "secure" the medical opinion and to furnish notice and a copy of the opinion to the claimant. The only authority under section 7109 given to the Secretary is the authority under section 7109(b) to make "necessary arrangements" with medical institutions to provide such opinions *at the request of the Board Chairman.*

In other words, the actions of the Board under section 7109, indeed *all* actions of the Board taken pursuant to chapter 71 of title 38, are wholly outside the Secretary's section-511(a)-decision-making process and are not subject to appeal within the Department under section 7104(a). Accordingly, Board review of medical opinions in the first instance, pursuant to section 7109, is not in conflict with the right "to one review on appeal" required by section 7104(a) since that right is limited to review of decisions made by the Secretary.

15

## C. Legislative History

A look at the legislative history behind the provision that is now section 7109 further undermines the majority's analysis.[3] The express purpose in enacting the provision that is now codified as section 7109 was "to improve the ***appellate procedures*** applicable to veterans' claims by authorizing the referral of such claims to independent medical experts" for the purpose of "resolv[ing] conflicts of evidence in questions involving service connection of disabilities or deaths." S. REP. NO. 1844 (1962), *reprinted in* 1962 U.S.C.C.A.N. 2585, 2585-86 (emphasis added). The scheme described by the majority, i.e., the Board requesting section-7109 medical opinions and then having to refer them to the RO for initial consideration, does nothing to improve the ***appellate procedures***. By specifically referencing appellate procedures, and by vesting the authority to procure such medical opinions in the Department's appellate body, it is difficult, if not impossible, to escape the conclusion that Congress intended that the Board be able to both procure ***and*** review the medical opinions obtained under section 7109.

## D. Absurd Result

The majority's interpretation of section 7104(a) leads to absurd results. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68-69 (1994) ("Some applications of respondent's position would produce results that were not merely odd, but positively absurd . . . . We do not assume that Congress, in passing laws, intended such results."); *Timex V.I., Inc. V. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998) ("statutory construction that causes absurd results is to be avoided if at all possible"). If the majority is correct, then, under section 7107, the Board could hold a hearing and record the testimony of the veteran but, because section 7107 fails to explicitly state that the Board can consider the veteran's testimony in the first instance, the hearing transcript would have to be sent to the RO for initial consideration (where the veteran likely already had a hearing, *see*, *e.g.*, 38 U.S.C. § 7105(a) (stating that, after the filing of a Notice of Disagreement, "[e]ach appellant will be accorded hearing . . . rights"); 38 C.F.R. § 3.103(a) (2003) (requiring notice of the right to a hearing and citing 38 U.S.C. § 501(a) as statutory authority for this right); § 3.105(i) (affording

---

[3] I recognize, of course, that the majority would likely eschew the legislative history because of their view that the intent of Congress is clear from the face of the statute. *See Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). However, as detailed in section I.B., above, the statutory language is decidedly less "clear" than the majority presents and the constrained reading of "secure" is not required to find harmony between sections 7109 and 7104(a).

claimant a hearing prior to severance of service connection, reduction in compensation or pension, and other reductions and discontinuances)).

Additionally, the Board would no longer be able to assess credibility, except in review of the RO's assessment, since it is not explicitly authorized to do so, again rejecting the well-recognized role of the Board to assess credibility. *See Cuevas v. Principi*, 3 Vet.App. 542, 547 (1992) (noting that the Board is **required** to "address the credibility of appellant's sworn testimony or provide reasons for discounting that testimony"); *Wilson v. Derwinski*, 2 Vet.App. 16, 20 (1991) (same); *Smith v. Derwinski*, 1 Vet.App. 235, 237-38 (1991) ("Determination of credibility is a function for the [Board]"). This also flies in the face of the well-recognized notion that the party observing testimony of a witness is best able to assess the credibility of that witness. *Cf. Miller v. Fenton*, 474 U.S. 104, 114 (1985) (when an "issue involves the credibility of witnesses and therefore turns largely on an evaluation of demeanor, there are compelling and familiar justifications for leaving the process of applying the law to fact to the trial court").

Furthermore, in *DAV v. Sec'y*, 327 F.3d at 1347-48, the Federal Circuit stated: "[W]hen Congress intended to authorize the Board to obtain additional evidence without 'one review on appeal to the Secretary,' it knew how to do so." The Federal Circuit goes on to note that Congress provided "express statutory authority" to obtain additional evidence, and the Court specifically cites to section 7109 as such an instance. *Id.* If the Federal Circuit was talking only about "obtaining" evidence in its narrowest sense, as the majority construes "secure," then there was no need for the Federal Circuit to note that Congress knew how to authorize the Board to "obtain" such evidence "without 'one review on appeal to the Secretary'" because the mere "obtaining" of evidence by the Board would not violate the one-review requirement.

In summary, Congress authorized the Board to secure advisory medical opinions and to hold a hearing, and its authorization logically includes the authority to consider the information so obtained. Contrary to the majority's conclusion, this authorization is not inconsistent with the right to one review, because the one review provided by section 511 is explicitly limited to a review of the decisions of the Secretary, not decisions of the Board. *See* 38 U.S.C. § 7104(a). Accordingly, I would find Board consideration of section-7109 medical opinions fully consistent with the statutory scheme.

## II. REMAND WITH VACATUR IS NOT THE ONLY OPTION

Surely no one can believe it appropriate that a combat veteran, having already waited over eleven years to have his case finally decided, is mandated to wait even longer while his claim is remanded to the Board so that it can be remanded to the RO, all so that, after nearly a dozen years, he can begin the process anew. Such a result should occur only if the law requires it and, in this case, I respectfully submit it does not. It is well settled that "[w]here findings are infirm because of an erroneous view of the law, a remand is the proper course *unless the record permits only one resolution of the factual issue*." *Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982) (emphasis added). Although the majority finds that the Board erred in law by considering Dr. Blincow's opinion in the first instance, the record in this case, as discussed in section III, below, permits only one resolution of the key factual issue: Mr. Padgett's right hip injuries were caused by his service-connected left-knee disability.

The majority's view that any review of the facts would somehow be de novo fact-finding, *ante* at 11, also ignores reality and the law. *Compare Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (conclusions of law reviewed under a *de novo* standard of review), *with Roberson v. Principi*, 17 Vet.App. 135, 147 (2003) (agency fact-finding reviewed under the deferential "clearly erroneous" standard of review). It is patently clear that the Board considered the evidence of record and found that the evidence weighed against the veteran, and this Court has clear authority to reverse findings of the Board adverse to the veteran if they are clearly erroneous. *See* 38 U.S.C. §§ 7252(a) ("[t]he Court shall have power to affirm, modify, *or reverse* a decision of the Board or to remand the matter, *as appropriate*" (emphasis added)), 7261(a)(4) (authorizing this Court to reverse clearly erroneous findings of material fact adverse to the claimant); *Schroeder v. West*, 212 F.3d 1265, 1271 (Fed. Cir. 2000); *Mariano v. Principi*, 17 Vet.App. 305, 316-17 (2003); *Svehla v. Principi*, 17 Vet.App. 160, 165-66 (2003).

Moreover, the Board's decision is not void *ab initio*, and the majority does not state that it is; indeed, the majority specifically notes that the Board's consideration of the medical opinion would not have precluded the Board from rendering a decision awarding benefits to Mr. Padgett and that he could waive the error – neither action is permissible if the decision was void *ab initio*. *See Breslow v. Brown*, 5 Vet.App. 560, 562 (1993) (quoting *Hooks v. Hooks*, 771 F.2d 935, 949 (6th Cir.

18

1985)) ("A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect.").

## III. THE FACTS IN THIS CASE WARRANT REVERSAL

The facts laid out in the majority opinion are generally complete, however, it is important to note that, although Mr. Padgett's service medical records do not address a right-hip-injury claim in service, the Board accepted as fact, pursuant to 38 U.S.C. § 1154(b) (presumptive service-connected disability sustained in combat), that Mr. Padgett injured his right-hip during combat at the same time that he injured his left knee. R. at 16. This information was either not known or not considered by Dr. Blincow, the VA physician who reviewed Mr. Padgett's records and provided an expert medical opinion; indeed, Dr. Blincow specifically noted that there was no evidence in the record of Mr. Padgett's having a hip injury in service.[4] R. at 418-20. Accordingly, Dr. Blincow's opinion was not based on all the relevant facts, has questionable probative value, and is entitled to little or no weight. *See Mariano*, 17 Vet.App. at 317 (flawed methodology in creating medical report renders report of "questionable probative value"); *Reonal v. Brown*, 5 Vet.App. 458, 461 (1993) ("An opinion based upon an inaccurate factual premise has no probative value."); *see also Bielby v. Brown*, 7 Vet.App. 260, 268 (1994) ("In order for an expert's opinion to be based upon the facts or data of a case, those facts or data must be disclosed to or perceived by the expert *prior to* rendering an opinion[;] otherwise the opinion is merely conjecture and of no assistance to the trier of fact.") (emphasis in original).[5]

---

[4] It appears that Dr. Henderson, another VA doctor, also either did not know or failed to consider the fact that Mr. Padgett injured his hip during combat. R. at 360-63. The Secretary asserts that Dr. Henderson's opinion should not have been used by the Board to support its decision based on the fact that Dr. Henderson did not have Mr. Padgett's medical records. Secretary's Br. at 10.

[5] Inasmuch as the Board erroneously determined that Dr. Blincow's opinion was "soundly grounded" and "far outweighed" the opinions of Drs. Shaw and Thoburn (R. at 18), there is no reason to believe that the Board will not do so again absent direction from this Court. This creates the ever-real possibility of cyclical remands, as the Board remands the case to the RO to consider, in the first instance, a medical opinion that is based on incomplete facts, to then be reviewed by the Board and possibly by this Court before the error is noted and acted upon, presumably by another remand. The majority's concept that there is no reason to believe the Board will not fix its error, presumes the Board, unaware of its error (absent discussion in this dissent), would somehow become aware of and remedy the error by giving less weight to Dr. Blincow's opinion on remand. This is counterintuitive.

19

In reviewing the Board's decision to deny the secondary-service-connected right-hip disability claim in light of the entire record in this case, there are two doctors with intimate knowledge[6] of Mr. Padgett and his medical status who opine that his left-knee injury "directly aggravated," "adversely impacted," or otherwise "contributed to" or "resulted in" his right-hip problems. R. at 261-62, 325, 340. The Board noted Dr. Shaw's opinion that Mr. Padgett's "in service left knee injury resulted in severe traumatic osteoarthritis of the left knee which adversely impacted the progression of degenerative disease of the right hip and aggravated his symptoms" and that his "in service left knee injury resulted in an irregular gait pattern which directly aggravated his right hip symptoms." Further, the Board noted Dr. Thoburn's opinion that Mr. Padgett's "left knee condition resulted in his weight shifting to the right side, which resulted in the progression of osteoarthritis of the right hip."[7] R. at 17.

In contrast to the opinions of Drs. Shaw and Thoburn, which are based on personal examinations and knowledge of Mr. Padgett's pertinent medical and physical history, are the opinions of Drs. Henderson and Blincow, both VA doctors. Dr. Henderson examined the veteran but did not review the claims file. R. at 361. Dr. Henderson's report also made no mention of Mr. Padgett's in-service right-hip injury. R. at 360-63. These factors render Dr. Henderson's report of little or no probative value. *See Mariano*, 17 Vet.App. at 312; *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991) (duty to assist requires providing the claimant with a thorough and contemporaneous

---

[6]  Dr. Thoburn, a rheumatologist, has been aware of Mr. Padgett's knee condition since at least 1975, when he was consulted by another doctor who believed Mr. Padgett to have severe degenerative arthritis and a possible torn medial meniscus of the left knee. R. at 162. In 1976, Dr. Thoburn treated Mr. Padgett for, inter alia, degenerative arthritis of the left knee. R. at 189-91. Dr. Shaw, an orthopaedic surgeon, began treating Mr. Padgett in 1982, performed his right-total-hip arthroplasty in 1989, and evaluated his medical condition in follow-up medical evaluations through 1991. R. at 226-37. Dr. Shaw provided copies of his periodic evaluations to Dr. Thoburn throughout his treatment of Mr. Padgett. R. at 226-37.

[7]  With regard to the direct-service-connection issue, the Board determined that the opinions of Drs. Shaw and Thoburn "appear to be largely based on the veteran's self-reported history of having sustained a right-hip injury in service" a fact that the Board *"accepted as true"* (R. at 15-16) (emphasis added), and it may be rebutted only by clear and convincing proof. *See Caluza v. Brown*, 7 Vet.App. 498, 508 (1995) ("Once this showing [of combat injury] has been made, the government has the burden to rebut by clear and convincing proof.")*, aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). Inasmuch as the Board finding with regard to secondary service connection is clearly erroneous, in this dissent the direct-service-connection issue need not be further addressed.

medical examination that "takes into account the records of prior medical treatment"); 38 C.F.R. § 4.1 ("It is . . . essential both in the examination and in the evaluation of a disability, that each disability be viewed in relation to its history.").

Moreover, Dr. Henderson's diagnosis was not definitive, "suggest[ing]" that his hip injury was due to the aging process, "suggest[ing]" that his knee injury in combat did not "necessarily" play a part in his need for a hip replacement, and further noting that "[f]or a more definitive opinion, it is suggested that a certified orthopedist review this case." R. at 363. The latter statement diminishes further the value of this report as probative medical evidence. *See Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923) (question involving special knowledge requires witness skilled in that area); *Espiritu v. Derwinski*, 2 Vet.App. 492, 495 (1992) (same); *see also Sklar v. Brown*, 5 Vet.App. 140, 146 (1993) (a specialist's opinion on a medical matter outside his or her specialty to be given little weight); *cf. Bloom v. West*, 12 Vet.App. 185, 187 (1999) (speculative medical opinion cannot establish in-service medical nexus to service).

Dr. Blincow's report fares no better. Although direct examination of the veteran by an expert is not necessary to make the expert's medical report competent, *see Black v. Brown*, 10 Vet.App. 279, 286 (1997) (Kramer, J., dissenting) ("medical opinions obtained from . . . [medical experts] provide sufficient bases for awarding a claim . . . and those physicians, by definition, examine only records, not patients") (citing 38 C.F.R. § 20.901(a), (d)), the lack of a complete and accurate record, at least as to material and relevant facts, certainly undercuts an expert opinion's probative value. *See Bielby*, *supra*. Dr. Blincow noted in his report that there "is no recorded record of any injury to the patient's right hip at the time of the [1944 left-knee injury]" (R. at 418) and that "[t]here is no mention of any injury to the right hip in the medical records" (R. at 419). He makes no reference to the presumptive occurrence of the right-hip injury under section 1154(b). R. at 418-20. Because Dr. Blincow's report fails to consider a material and relevant fact, his expert opinion has reduced, if any, evidentiary value. See *Mariano,*and *Reonal*, both *supra.*

Despite the infirmities in the reports of Drs. Henderson and Blincow, and the lack of such infirmities regarding the opinions of Drs. Shaw and Thoburn, the Board found that the probative value of the opinions of Drs. Henderson and Blincow, both VA doctors, "far outweighed" the value of the opinions of Drs. Shaw and Thoburn. Based on this weighing of the evidence, the Board found

that Mr. Padgett's right-hip injury was not secondarily service connected[8] and that the preponderance of the evidence was against the claim. R. at 18. However, given the little probative weight, if any, that can legally and reasonably be accorded the opinions of Drs. Henderson and Blincow, as opposed to the opinions of Drs. Shaw and Thorburn that strongly support a secondary service connection for the right-hip injury, the finding of the Board to the contrary is simply not "plausible *in light of the record viewed in its entirety*," leaving me with a definite and firm conviction that the Board clearly erred in its decision denying Mr. Padgett secondary service connection for his right-hip injury. *Gilbert*, 1 Vet.App. at 52 (quoting *Anderson*, 470 U.S. at 574). *See also* 38 C.F.R. § 3.303(a) (2003) ("Determinations as to service connection will be based on review of the entire evidence of record . . ."); *Guerrieri v. Brown*, 4 Vet.App. 467, 470-71 (1993) ("probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusion that the physician reaches"). The only plausible resolution of the key factual issue in this case is that Mr. Padgett's right hip injuries were caused by his service-connected left-knee disability and the Board's decision that the evidence preponderated against the claim is clearly erroneous. *See Pullman-Standard*, *supra; Harder v. Brown*, 5 Vet.App 183 (1993) ("Taken together, the sum total of all this credible evidence dictated one result: granting service connection," thus warranting reversal). The Board decision in this case should be reversed.

For the above reasons, I respectfully dissent.

---

[8] The Board also found the right-hip injury was not directly service connected. As noted in footnote 7, *supra*, this issue need not be further addressed.