Citation Nr: 1132122 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 04-36 335 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Buffalo, New York


THE ISSUES

1. Entitlement to service connection for joint pain, claimed as due to an undiagnosed illness as a result of service in the Southwest Asia theater during the Persian Gulf War. 

2. Entitlement to service connection for muscle aches, claimed as due to an undiagnosed illness as a result of service in the Southwest Asia theater during the Persian Gulf War.


REPRESENTATION

Appellant represented by: Jaya A. Shurtliff, Attorney at Law


WITNESS AT HEARING ON APPEAL

Appellant and his wife

ATTORNEY FOR THE BOARD

J. Hager, Counsel


INTRODUCTION

The Veteran served on active duty from March 1989 to April 1992, including in the Southwest Asia theater during the Persian Gulf War. 

These matters initially came before the Board of Veterans' Appeals (Board) from a November 2003 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Buffalo, New York. In that decision, the RO, among other things, denied entitlement to service connection for joint pain and muscle aches, each claimed as due to an undiagnosed illness. 

The Veteran testified before a hearing officer at the RO in February 2005, and he and his wife testified before the undersigned at the RO in June 2007. Transcripts of both hearings have been associated with the record. 

In September 2007, the Board remanded the claims to the RO, via the Appeals Management Center (AMC). In June 2008 the Board denied each claim, and also granted service connection for fibromyalgia. The Veteran appealed the Board's denial to the United States Court of Appeals for Veterans Claims (Court). In June 2009, counsel for the Veteran and VA filed a Joint Motion with the Court to vacate and remand that portion of the June 2008 Board decision that denied the claims for service connection for joint pain and muscle aches, and remanding these matters to the Board for further proceedings consistent with the Joint Motion, without disturbing the Board's grant of service connection for fibromyalgia. In a June 2009 Order, the Court granted the Joint Motion.

In November 2009, the Board remanded the claims, pursuant to the Joint Motion, for additional development. For the reasons stated below, the RO/AMC complied with the Board's November 2009 remand instructions.

In May 2010 and again in April 2011, the Veteran filed VA Form 9s, the form for filing a substantive appeal, on which he requested a hearing at the Board and a videoconference hearing. Given that VA's statutory and regulatory scheme contemplate a single substantive appeal and Board hearing, the Board finds that these subsequent substantive appeals and hearing requests did not require any additional action by the RO/AMC. See 38 U.S.C.A. §§ 7105(a) (appellate review "completed by a substantive appeal"); 7107(b) (Board shall decide appeal only after affording appellant "an opportunity for a hearing"); 38 C.F.R. §§ 20.200 (appeal includes "a timely filed substantive appeal"); 20.700 (referring to a hearing) (emphasis added).

In its June 2008 decision, the RO also denied entitlement to service connection for PTSD based on a lack of diagnosis of this disease. However, the Veteran and lay witnesses have indicated that the Veteran suffers from various psychiatric symptoms. Among the signs or symptoms that may be manifestations of undiagnosed illness are neuropsychological signs and symptoms. 38 U.S.C.A. § 1117(g)(7) (West 2002); 38 C.F.R. § 3.317(b)(7) (2010). Consequently, the issue of entitlement to service connection for neuropsychiatric symptoms, claimed as due to an undiagnosed illness as a result of service in the Southwest Asia theater during the Persian Gulf War, has been raised by the record, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action.


FINDINGS OF FACT

1. The Veteran served in the Southwest Asia theater of operations during the Persian Gulf War.

2. The Veteran's symptoms have either been attributed to his service connected fibromyalgia or to a known clinical diagnosis, and no such known diagnosed disability is related to service.

3. This case does not involve such medical complexity or controversy as to require an opinion from an independent medical expert (IME).


CONCLUSIONS OF LAW

1. The Veteran does not exhibit signs and symptoms of joint pains as a manifestation of an undiagnosed illness that was incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1117, 1131, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.317 (2010). 

2. The Veteran does not exhibit signs and symptoms of muscle aches as a manifestation of an undiagnosed illness that was incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1117, 1131; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.317.

3. An advisory medical opinion from an independent medical expert is not warranted. 38 U.S.C.A. § 7109 (West 2002); 38 C.F.R. §§ 20.901(d), 20.902 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VCAA

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002 & Supp. 2010)) redefined VA's duty to assist the Veteran in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2010).

Under the VCAA, VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) must request that the claimant provide any evidence in his possession that pertains to the claim. Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004); 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

The Court has also held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

In April and September 2007 letters, the RO and AMC notified the Veteran of the evidence needed to substantiate each of the service connection claims on appeal. These letters also satisfied the second and third elements of the duty to notify by delineating the evidence VA would assist in obtaining and the evidence it was expected that he would provide. Quartuccio v. Principi, 16 Vet. App. 183, 186-87 (2002); Charles v. Principi, 16 Vet. App. 370 (2002).

For claims pending before VA on or after May 30, 2008, 38 C.F.R. 3.159 was amended to eliminate the requirement that VA request that a claimant submit any evidence in his or her possession that might substantiate the claim. 73 Fed. Reg. 23,353 (Apr. 30, 2008). In any event, the April 2007 letter complied with this requirement.

The Veteran has substantiated his status as a veteran. The Veteran was notified of all other elements of the Dingess notice, including the disability-rating and effective-date elements of his claims, in March 2006 letter, as well as the September 2007 letter.

Contrary to VCAA requirements, the VCAA-compliant notice in this case was provided after the initial adjudication of the claims. Mayfield v. Nicholson, 444 F.3d 1328, 1333 (Fed. Cir. 2006). The timing deficiency was cured by readjudication of the claims in a March 2011 supplemental statement of the case (SSOC). Mayfield v. Nicholson, 499 F.3d 1317, 1323 (Fed. Cir. 2007).

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4). 

In this case, VA obtained the Veteran's service treatment records (STRs) and all of the identified post-service private and VA treatment records. As discussed below, Dr. Dura's September 2008 letter referred to studies being performed by Dr. Federowicz. Dr. Dura's treatment notes also indicated that the Veteran's CTS was being followed by Dr. Federowicz. As the Veteran has not authorized the release of Dr. Federowicz's records and there is no indication that they relate to the issues on appeal as opposed to the Veteran's already diagnosed CTS, the Board finds that a remand to attempt to obtain Dr. Federowicz's treatment records is not required. See 38 C.F.R. §§ 3.159(c)(1)(i), (ii) (requiring claimant to cooperate fully with VA's efforts to obtain non-federal records, including providing identifying information and authorizing release of records).

In addition, the Veteran submitted a copy of an August 2010 e-mail to his state senator in which he indicated that he had been receiving Social Security Administration (SSA) disability for two years. When the evidence indicates that the Veteran is in receipt of SSA disability payments, VA's duty to assist requires that it seek the SSA's disability determination and the medical records underlying it only when these records are relevant to the claims. See Golz v. Shinseki, 590 F.3d 1317, 1320-1321 (Fed. Cir. 2010). In this case, there is already medical evidence specifically addressing the nature of the Veteran's muscle and joint pain, and there is no allegation by the Veteran or his attorney that the evidence, reports or evaluations in conjunction with the SSA decision may contain additional evidence as to these issues. The Board therefore finds the SSA disability determination records are not potentially relevant to the issues on appeal and a remand to obtain these records would serve no useful purpose and would impose unnecessary burdens on VA's adjudication system with no benefit flowing to the Veteran and cause additional delay in a case with an already lengthy appeal period. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (citing Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991)) (remand not required when it would impose unnecessary burdens on VA adjudication system with no benefit flowing to the veteran).

Finally in this regard, during the Board hearing, the undersigned asked questions of the Veteran and his wife that indicated the Veteran should submit any potentially relevant evidence in his possession. This action provided an opportunity for the Veteran and his representative to introduce material evidence and pertinent arguments, in compliance with 38 C.F.R. § 3.103(c)(2) (2010). See Bryant v. Shinseki, 23 Vet. App. 488 (2010). 

For the reasons set forth above, the Board finds that VA has complied with the VCAA's notification and assistance requirements. The claims for entitlement to service connection for joint pain and muscle aches, each claimed as due to an undiagnosed illness are thus ready to be considered on the merits.


Analysis

Initially, the Board notes that the evidence does not reflect that the Veteran served in combat. Thus, he is not entitled to application of the provisions of 38 U.S.C.A. § 1154(b) (West 2002). 

Generally, service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). 
In this case, the Veteran's service personnel records reflect that he is a Persian Gulf veteran, and Congress has created special rules with regard to such veterans establishing entitlement to service connection. Service connection may be granted to a Persian Gulf veteran who exhibits objective indications of a "qualifying chronic disability." 38 U.S.C.A. § 1117(a)(1); 38 C.F.R. § 317(a)(1). A qualifying chronic disability is currently defined as either an undiagnosed illness or a medically unexplained chronic multisymptom illness defined by a cluster of signs or symptoms. 38 U.S.C.A. § 1117(a)(2); 38 C.F.R. § 3.317(a)(2). Fibromyalgia is listed as a medically unexplained chronic multisymptom illness. 38 U.S.C.A. § 1117(a)(2)(B); 38 C.F.R. § 3.317(a)(2)(B)(2). 

The symptoms must be manifest to a degree of 10 percent or more during the presumptive periods prescribed by the Secretary or by December 31, 2011. 38 U.S.C.A. § 1117(a)(1)(B); (b)(2); 38 C.F.R. § 3.317 (a)(1)(i). By history, physical examination and laboratory tests, the disability cannot be attributed to any known clinical diagnosis. 38 C.F.R. § 3.317(a)(1)(ii). Objective indications of chronic disability include both "signs" in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317(a)(2)(ii)(3). Disabilities that have existed for 6 months or more and disabilities that exhibit intermittent episodes of improvement and worsening over a 6-month period will be considered chronic. 38 C.F.R. § 3.317(a)(2)(ii)(4). The signs and symptoms which may be manifestations of undiagnosed illness or a chronic multisymptom illness include, but are not limited to muscle and joint pain. 38 U.S.C.A. §§ 1117(g)(4),(5); 38 C.F.R. § 3.317 (b)(4),(5).

In addition, even where, as here, service connection is claimed and denied on a presumptive basis, the Board must also consider whether the veteran is entitled to service connection on a direct incurrence basis. See 38 U.S.C.A. § 1113(b) (West 2002) (nothing in laws relating to presumptive service connection "shall be construed to prevent the granting of service connection for any disease or disorder otherwise shown by sound judgment to have been incurred in or aggravated by . . . service"); Combee v. Brown, 34 F.3d 1039, 1043-1044 (Fed. Cir. 1994) (when a veteran is found not to be entitled to a regulatory presumption of service connection for a given disability, the claim must nevertheless be reviewed to determine whether service connection can be established on a direct basis); EF v. Derwinski, 1 Vet. App. 324, 326 (1991) (Board must review all issues reasonably raised from a liberal reading of all documents in the record). In the context of a claim for service connection based on undiagnosed illness, this means that, if such a claim is denied because the symptoms have been attributed to a known clinical diagnosis, the Board must address whether the disability so diagnosed is related to service on a direct incurrence basis.

With regard to entitlement to service connection on a direct incurrence basis, Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a).

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third elements is through a demonstration of continuity of symptomatology. See Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). A claimant can establish continuity of symptomatology with competent evidence showing: (1) that a condition was "noted" during service; (2) post-service continuity of the same symptomatology; and (3) a nexus between a current disability and the post-service symptomatology. Savage v. Gober, 10 Vet. App. 488, 495-96 (1997); 38 C.F.R. § 3.303(b).

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

As noted, the Veteran has contended that he has joint and muscle pain that are manifestations of an undiagnosed illness. The Veteran has been granted entitlement to service connection for fibromyalgia as a medically unexplained chronic multisymptom illness based under the Persian Gulf veteran related statute and regulation discussed above. Consequently, if any of the symptoms for which he claims service connection are due to fibromyalgia, he cannot be granted separate service connection for such symptoms as due to an undiagnosed illness, because he has already been compensated for these symptoms pursuant to the grant of service connection for fibromyalgia. Moreover, if any of the symptoms for which the Veteran claims service connection are attributable to a known clinical diagnosis, the Veteran cannot be granted entitlement to service connection based on an undiagnosed illness and the Board must consider entitlement on a direct incurrence basis. For the following reasons, the Board finds that the symptoms for which the Veteran claims entitlement to service connection for joint and muscle pain as due to undiagnosed illness are attributable either to his fibromyalgia or to a known clinical diagnosis, and that no such known diagnosed disability is related to service.

A June 2002 VA outpatient record shows the veteran complained of a one-and-a-half-year history of intermittent pain without swelling of the right knee, more so than the left knee. He also noticed some paresthesias in both hands. On examination, there was mild stiffness of the knees without objective findings. The assessment was variable arthritis of the knees, bilateral carpal tunnel syndrome related to current employment, and the likelihood of some possibility of connection of arthritis to environmental exposures in the Gulf. 

In January 2003, the Veteran underwent VA examination. He complained of finger and knee joint pain and muscle aches due to undiagnosed Gulf War illness. On examination, there was no swelling of the finger joints. He had normal flexion and extension. Grip strength was normal, bilaterally. He had full and normal fine and gross motor ability in both hands. Range of motion of the wrists was normal, and there was no swelling or deformity. The knees had normal range of motion. The overall impression was pain in the finger and knee joints. There was a normal physical examination of the same. The examiner could not provide a diagnosis. 

In January 2005, the Veteran testified before a hearing officer at the RO. He indicated that his hands fell asleep often. He complained of joint pain in his knees after running. If he used his muscles too much, he got aches and pains. It was in whatever part of the body he used too much. He had to lift a lot of heavy things at work, and his muscles got fatigued and cramped. 

A February 2005 VA outpatient record shows the Veteran complained of bilateral carpal tunnel syndrome. He also hurt all over, including his feet, back, and other joints. The impression was bilateral carpal tunnel. X-rays of the hands and wrists were normal. 

March and May 2005 VA treatment records show the Veteran complained of numbness and tingling in his hands. 

September 2005 VA records show the Veteran underwent surgery for his bilateral carpal tunnel syndrome. 

In February 2006, the Veteran complained of pain in both feet. On examination, his gait was steady, and he had no limp. Both feet appeared normal. He had no swelling, redness, or bruising. He had generally good range of motion throughout. The impression was bilateral foot pain. 

A March 2006 VA outpatient record shows the Veteran was diagnosed with muscle spasms and joint arthralgias.

A March 2006 VA record indicates the Veteran complained of stiffness and numbness of the hands and wrists. He had daily muscle spasms in his back, arms, and legs since 1995. All of his joints ached, especially when he was tired. On examination, the veteran had full range of motion of the upper and lower extremities. 

A June 2006 VA rheumatology record indicates the veteran complained of arthralgia and muscle spasms for years, particularly in his knees. He had pain in his ankles and feet for the past year. He had intermittent pain in his neck. The Veteran had swelling of the hands and feet daily. On examination, the veteran had some mildly tender fibromyalgia points. He had no evidence of synovitis in the upper and lower extremity joints. His knees showed no effusion. He had good range of motion and no crepitus. The physician concluded that the examination did not reveal any evidence of inflammatory arthritis. Past blood work revealed no evidence of autoimmune disease. He had mild fibromyalgia, which was probably related to stress. 

In June 2007, the Veteran and his wife testified before the undersigned. He wore prosthetics on his feet and had surgery on his hands. When he walked uphill, his knees hurt and ached. The same was true of his ankles. The joint pain was in his elbows, wrists, knees, ankles, hips, neck, and back. 

In October 2007, the Veteran underwent VA examination. Significantly, however, the Joint Motion indicated that this examination was inadequate because it was based on an inaccurate factual premise, i.e., that the Veteran did not have fibromyalgia. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (a medical opinion based on an inaccurate factual premise is not probative). The Joint Motion also indicated that the examination was inadequate because the examination request had asked whether there were any "objective medical indications" of muscle and joint pain (to which the examiner responded in the negative), but the regulation requires "objective indications of qualifying chronic disability." The parties to the Joint Motion also found fault with the Board's analysis of the examiner's "ambiguous" conclusion that "it [was] at least as likely as not" that the Veteran's joint pain and muscle aches were "unrelated etiologically to his active military service," because the Board found this to be a determination that the disorders were not related to his active service when in fact the statement "appears to denote a 50 percent probability." Given the inaccurate factual premise and flawed examination request, the Board finds that reliance on this examination would be inappropriate. The Board will therefore neither rely on this examination in its analysis nor address whether the statement that it was "at least as likely as not" that the joint pains and muscle aches were not related to service is ambiguous or reflects a 50 percent possibility that there was a relationship.

Pursuant to the Board's November 2009 remand, a VA examination was requested that, in accordance with the Board's remand instructions, noted that the Veteran had been diagnosed with fibromyalgia, requested that the examiner note all signs and symptoms of joint pain and muscle aches, and state whether there were any objective indications of chronic disability, defining that term as referring to both signs in the medical sense of objective evidence perceptible to an examining physician, as well as other, non-medical indicators that are capable of independent verification. The examination request also required a determination as to whether the joint pain and muscle aches were attributable any known diagnostic entity and, if not, that the examiner state whether he was unable to ascribe a diagnosis to the Veteran's complaints. Finally, the examination request indicated that if joint pain and muscle aches were ascribed to a known disease entity, the examiner should provide an opinion as to whether it was at least as likely as not that the known disease entity causing the joint pain and/or muscle aches was etiologically related to the Veteran's military service.

The May 2010 VA examiner reviewed the claims file and examined the Veteran. Her impressions noted Dr. Dura's recent impression (discussed below) that the Veteran was rheumatologically stable, had been doing a lot of car work, and had been doing well except for some right shoulder pain; gastroesophageal reflux disease resulting in a history of Barrett's esophagus for which the Veteran received surgery; numerous joint and muscle injuries that would be addressed in a separate examination; and depression.

The June 2010 VA examination was conducted by the same examiner who had conducted the October 2007 VA examination. After reviewing the claims file and examining the Veteran, he diagnosed chronic thoracolumbar sprain secondary to a compression fracture of the thoracolumbar vertebral segments, status post carpal tunnel release with minimal residuals, and normal knee, cervical spine, and shoulder examinations.

The RO/AMC found both of the above examinations to be inadequate because they did not fully respond to the examination request, which was based on the Board's remand instructions. In December 2010, a registered nurse/adult nurse practitioner (RN/ANP-BC) reviewed the claims file and found that some of the issues were related to orthopedic problems as with the spine or bilateral CTS. As to whether there were objective medical indications that the Veteran was suffering from joint pains and muscle aches, she simply referred to previous X-rays and trigger points on physical examinations. As to whether joint and muscle aches were attributable to known diagnostic entity, to include fibromyalgia, she found that most of the current symptoms could be attributed to fibromyalgia. As to whether a known disease entity was at least as likely as not related to service, she wrote, "At this point with much of the examination being normal in terms of joint findings and ROM, but with significant response on testing for trigger points, and meeting the criteria for fibromyalgia, since fibromyalgia is presumptively related to Persian Gulf service, the answer is "Yes."

Finally, in a December 2010 addendum, in response to the RO/AMC's request for clarification, the physician who conducted the May 2010 VA examination specifically responded to the examination request, the physician found that the chronic thoracolumbar sprain secondary to compression fracture of the thoracolumbar vertebral segments related to 2007-2008 work injuries would not be related to military service and also would not fall under the classification of an undiagnosed illness for compensation an pension purposes. She also found that fibromyalgia, a diagnosis made by other practitioners, had been found to be associated with musculoskeletal complaints and tender areas reportedly including upper mid-trapezius right and left, supraspinatus right and left, sub occipital muscle, right lateral epicondyle, pectoralis tendon, right knee, and right trochanteric areas, and that these symptoms were at least as likely as not related to fibromyalgia. She also found that CTS was not likely related to service, based on the post-service diagnosis of this disability related to employment activities at that time and the lack of evidence that it was related to service. She also noted that CTS is not an undiagnosed illness for compensation and pension purposes. She also found that GERD and hiatal hernia with Barrett's esophagus reportedly dated from 2001, and there was therefore no evidence of development during service or within a year of discharge, and that it was not an undiagnosed illness for compensation and pension purposes.

Dr Dura's September 2008 letter to Dr. Federowicz indicated that the Veteran met some of the criteria for fibromyalgia syndrome (FMS), including soft tissue tender points, both axial and appendicular pain, the chronicity of the pain, a sleep disturbance, and intermittent depression, along with other issues better defined through studies being performed by Dr. Federowicz. The only other abnormality he could discern was a question of symmetric thyroid enlargement that might be low grade without any tenderness or definite nodules palpable. Dr. Dura's treatment notes from October 2008 to April 2010 contain diagnoses of fibromyalgia syndrome, depression, osteopenia of the lumbar spine with history of fracture due to an injury, and rheumatologically stable at this time (April 2010). The problem list included fibromyalgia syndrome, right shoulder pain: pectoralis tendonitis, right elbow pain: lateral epicondylitis, osteopenia particularly in the lumbar spine, L4, history of T12 compression, cervicalgia and possible cervical spondylosis, right shoulder pain, chronic for a year, suspected impingement syndrome/osteoarthritis, low back pain with intermittent muscle spasms lumbar region, suspected spondylosis, right great toe pain: suspected osteoarthritis, history of bilateral CTS, and medical comorbidities: history hiatal hernia with Barrett's esophagus status post surgical procedure done paparoscopically.

The above evidence reflects that the Veteran's symptoms of joint pain and muscle aches have either been attributed to known diagnosis or the fibromyalgia for which he has already been granted service connection. The May 2010 VA examiner in her December 2010 addendum offered a thorough and reasoned opinion indicating that the symptoms of musculoskeletal complaints and tender areas were likely related ("at least as likely as not") to fibromyalgia. She also found that chronic thoracolumbar sprain secondary to compression fracture of the thoracolumbar vertebral segments was related to post-service injury and not service, and that CTS was not likely related to service based on the post service diagnosis in connection with employment activity and lack of evidence indicating a relationship to service. Finally, she found that GERD with hiatal hernia with Barrett's esophagus was not related to service as it began in 2001 and there was no evidence of development during service. As the May 2010 VA examiner's December 2010 addendum comprehensively reviewed all of the symptoms and explained the reasons for concluding that they were related to either fibromyalgia or a known clinical diagnosis, and found that the known clinical diagnoses were not related to service, her opinion is entitled to substantial probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning). There is no contrary medical opinion of similar probative weight in the claims file. Dr. Dura diagnosed fibromyalgia and the December 2010 VA examiner found that a known disease entity was likely related to service, but indicated that this disease entity was fibromyalgia.

In addition, the opinion as to a lack of relationship to service is consistent with the evidence of record, which reflects that the STRs are negative for any complaints or treatment regarding his hands, shoulders, wrists, knees, back, feet, or neck. The Veteran waived a separation medical examination. Moreover, he did not specifically testify that he experienced continuity of symptomatology, but, rather, indicated that his current disabilities were related to exposures to hazardous substances during his Persian Gulf service.

As to the Veteran's statements indicating that his current symptoms are manifestations of an undiagnosed illness related to his Persian Gulf service, lay witnesses are competent to opine as to some matters of diagnosis and etiology, and the Board must determine on a case by case basis whether a veteran's particular disability is the type of disability for which lay evidence is competent. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Kahana v. Shinseki, See Kahana v. Shinseki, 24 Vet. App. 428, 433, n. 4 (2011). In this case, the Veteran's testimony as to whether his symptoms are manifestations of undiagnosed illness due to his Persian Gulf service is testimony as to an internal medical process that is of the type that the courts have found to be beyond the competence of lay witnesses. Compare Jandreau, 492 F.3d at 1376 (lay witness capable of diagnosing dislocated shoulder); Barr, 21 Vet. App. at 308-309 (lay testimony is competent to establish the presence of varicose veins); Falzone v. Brown, 8 Vet. App. 398, 403 (1995) (lay person competent to testify to pain and visible flatness of his feet); with Clemons v. Shinseki, 23 Vet. App. 1, 6 (2009) ("It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant"); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); Jandreau, 492 F.3d at 1377, n.4 ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer"). Moreover, even if the Veteran's testimony were competent in this regard, the probative value of his general lay assertions are outweighed by the detailed and reasoned findings of the trained medical professionals discussed above, in particular the May 2010 VA examiner's December 2010 addendum.

With regard to the instructions in the Joint Motion, the examination requests complied with the Board's November 2009 remand instructions, which were based on the instructions in the Joint Motion, in particular the use of the term "objective indications of chronic disability" rather than "objective medical indications." More significantly, when the examiners did not initially provide sufficiently responsive answers to the examination request, the RO/AMC requested clarification, resulting in the probative opinion addressing all of the relevant medical questions as discussed above. Consequently, the RO/AMC substantially complied with the Board's November 2009 remand instructions. See Donnellan v. Shinseki, 24 Vet. App. 167, 176 (2010) ("It is substantial compliance, not absolute compliance, that is required" under Stegall) (citing Dyment v. West, 13 Vet. App. 141, 146-47 (1999)).

Finally, the Board notes that the Veteran's representative, in March 2008, requested that an opinion be obtained from an independent medical expert (IME) in connection with the instant claim pursuant to 38 C.F.R. § 20.901(d). The Board may obtain an advisory medical opinion from an IME when, in its opinion, a medical opinion is warranted by the medical complexity or controversy involved in the appeal. 38 U.S.C.A. § 7109; 38 C.F.R. § 20.901(d). The necessity of obtaining such an opinion is left to the discretion of the Board. See Bielby v. Brown, 7 Vet. App. 260, 269 (1994).

While the Veteran's representative submitted a written request for such an opinion, see 38 C.F.R. § 20.902, such request did not lay out a reason for obtaining the opinion of an independent medical expert. The request is based on the Veteran's exposure to Sarin gas and other chemicals during service. The Board has already acknowledged the veteran's service in the Southwest Asia theater of operations during the Persian Gulf War. The issue here is the residual diagnosis. Based on its review of the evidence, the Board finds that the medical evidence in this case does not present a complex medical question or controversy. Hence, good cause not being shown, an advisory opinion from an IME is not required under 38 C.F.R. § 20.902. See also 38 C.F.R. § 20.901(d).

For the foregoing reasons, the preponderance of the evidence is against the claims for entitlement to service connection for joint pains and muscle aches. The benefit-of-the-doubt doctrine is therefore not for application, and the claims must be denied. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; see also Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009).


ORDER

Entitlement to service connection for joint pain, claimed as due to an undiagnosed illness as a result of service in the Southwest Asia theater during the Persian Gulf War, is denied.

Entitlement to service connection for muscle aches, claimed as due to an undiagnosed illness as a result of service in the Southwest Asia theater during the Persian Gulf War, is denied.


____________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs